JACOB LINN AND WIFE v. C. ARAMBOULD.

(Case No. 2765.)

</div>

1. FINAL JUDGMENT — APPEAL — JURISDICTION.— In a suit to cancel deeds on account of fraud in their procurement, the judgment was for the plaintiff, directing a writ of restitution and execution for costs, but reciting that inasmuch as a new trial had been granted in regard to the issue raised by the pleadings as to the amount of the purchase money paid by defendants, the judgment or decree cancelling the deeds should be held in abeyance until that issue should be determined. *Held,*

(1) There could be no final judgment from which an appeal or writ of error could be prosecuted, until all the issues as to all the parties had been finally adjudicated in the district court.

(2) No order or decree which does not preclude further proceedings in the case in the court below can be regarded as final.

(3) The defendants having prayed for a condemnation and sale of the land to satisfy their claim for purchase money, and that issue remaining undisposed of, the judgment was interlocutory, from which no appeal could be taken.

(4) The cause should proceed in the district court as though no trial had occurred.

(5) The district court should allow the case to be reinstated on its docket after notice.

Appeal from Bexar.    Tried below before the Hon.
Geo. H. Noonan.

Suit brought by Concepcion Arambould (the former
wife of Ignacio Perez, deceased), joined by her present
husband, Refugio Arambould, in behalf of herself and
her two minor children, Josefa and Trinidad Perez, by
her first marriage, against Jacob Linn and wife, to set
aside conveyances made by Ignacio Perez during his life-
time, and shortly before his death, of certain parcels of
land specified in the petition, conveyed to Jacob Linn and
his wife.    The petition also alleged that said Ignacio
Perez had alike sold, by bill of sale, certain horses and
cattle to Jacob Linn; all of which sales and conveyances
plaintiffs alleged were invalid; that they were made
without consideration, and obtained from said Perez
through fraud, and by operating upon the fears of Perez,
who, it is alleged, was at the time imbecile, and wholly
incapable of making a valid contract.    The plaintiffs
prayed for a cancellation of the deeds, and for $2,500
damages.    The defendants denied specially and generally
each of the grounds set up by plaintiffs of such invalidity.
The full merits of the issues formed by the parties need
not be fully set forth here, in view of the opinion
expressed as to the jurisdictional question involved in the
appeal, and the determination of which depends upon
the construction to be placed upon the proceedings had in
the district court in ascertaining whether an appeal lies
to the supreme court from the judgment which has been
rendered.

The answer of the defendants alleged the payment by
them of full value of the property conveyed to them, and
prayed that in case it should be determined that they had
acquired no title to the property in controversy, that they
should have judgment for the several sums paid by them
to Ignacio Perez for the property, with legal interest from
the dates of payment, and that the property be decreed

to be sold to pay the same, and for such other orders, judgments and decrees as may seem necessary, etc.

The cause was submitted to a jury, and the judge charged them as to the law applicable to the issues made in the case; the instructions given contemplated a general verdict upon the entire case, and, among other things, the jury were instructed that in case they found for the plaintiffs, requiring the cancellation of the deeds, in that event they are required to find a verdict for the defendants for such amount as they believed from the evidence was paid by Linn and wife to Ignacio Perez, together with interest at the rate of eight per cent. from the date of the deed.

The defendants in their answer alleged that before the death of Ignacio Perez, whilst he was in need of pecuniary aid and a home, that Linn had at great expense provided for him by boarding him in his family, and supplying his wants, etc., at a cost of from about $1,700 to $2,000. They alleged that the parcels of land conveyed to them were worth respectively about $1,100, and $300 or $400; that said Linn purchased from said Perez about fifteen or twenty head of horses, at the price of $15 per head.

There was evidence tending to establish the fact that the defendant Linn had, as alleged, furnished a home to Perez, and had boarded him, and otherwise furnished him with means and comforts to some extent — to what precise amount the testimony does not fully or clearly show. It is to be inferred from the pleadings and the evidence, that the defendant Linn relied upon his advances to Perez as evidence to show that the amounts thus paid, and the advances made for his benefit, entered into the consideration of the conveyances made to him and his wife of the land and the stock of horses.

The verdict of the jury was as follows: "We, the jury, find for the plaintiffs, and think that the stock of horses, valued at $350, purchased or got of the plaintiffs,

would compensate the defendants for all the charges and claims and interest thereon to date."

The judgment of the court proceeds to decree a cancellation of the deeds in the usual form, and concludes as follows:

"It is further ordered, adjudged and decreed, that the heirs of Ignacio Perez, Jr., deceased, be forever quieted in their title in and to the property set forth in said deeds of conveyance, and that a writ of restitution be issued, placing them in possession of the same, and that they be quieted in their possession thereto, and that they have and recover of and from the defendants Jacob Linn and his wife, Josefa Perez de Linn, all costs in this behalf expended, for which execution may issue. But inasmuch as there has been a new trial granted to the defendants in regard to the issue raised by the pleadings as to the .amount of the purchase money paid by the defendants to Perez, it is ordered that the foregoing decree of cancellation shall be inoperative and held in abeyance until such time as the issue respecting the purchase money shall have been fully and finally adjudicated, and the amount so ascertained to be due the defendants for the purchase money as aforesaid shall have been paid into court."

The order made upon the motion for new trial was to the effect that the same is overruled "as to the verdict in favor of plaintiffs as to the incapacity of Ignacio Perez, but granted in regard to the question of the verdict in favor of Jacob Linn, which issue will be retried."

*Waelder & Upson*, for appellants.— We have no hesitancy in expressing the opinion that the order of the court, partially overruling and partially granting appellants' motion for a new trial, was erroneous. That the entry of the decree in its present form was equally erroneous seems as clear. But the question still recurs, at what stage of the proceedings can the defendants have

their appeal, and how far would they be debarred by apparently acquiescing in the first judgment and going into the trial of the second issue? As the judgment is not strictly an interlocutory order, can this court so render its decision now as to settle the question of practice without prejudice to the parties, and pass its opinion upon the propriety of setting aside a part and sustaining another part of a verdict? In other words, can the court so dispose of the present record as to remand the case to the district court for another trial of all the issues, so as to secure a final judgment, which will settle all questions between the same parties?

It is true that "any judgment or decree, leaving some further act to be done by the court before the rights of the parties are determined, and not putting an end to the action in which it is entered, is interlocutory." Freeman on Judg., p. 9, § 12. "But," says the same author, "if it so completely fixes the rights of the parties that the court has nothing further to do in the action, then it is final." Ibid.

In the case at bar all the rights of the parties are not determined. But the plaintiffs pray for a cancellation of deeds. This prayer is granted so completely that the court has nothing further to do in regard to it. The decree, it is true, is made conditional, but the question of cancellation is so fully passed upon that it cannot be reopened without a reversal of the judgment.

On the other hand, the answer of the defendants prays for reimbursement of money paid in case of cancellation. This is a plea in reconvention; and while it is an issue in the case, and should be disposed of together with the other issue, the court below has seen proper to make it a distinct and separate question, raised by the defendants, and not in the original action.

Says the author before quoted: "Sometimes several issues of law and of fact are presented for the consider-

ation of the court in the same suit or proceeding. In such case there can be no judgment from which an appeal may be taken until all the issues are determined." Freeman on Judg., p. 13, § 20, referring to King *v.* Stafford, 5 How. Pr., 30; Bentley *v.* Jones, 4 How. Pr., 335. These decisions were, however, made under the New York code of practice, and cannot, therefore, control our practice under our blended system of law and equity.

In equitable proceedings — and this is an equitable proceeding, — it is more difficult to determine what is a final decree. So we find in Freeman's work, that "a decree is none the less final because some future orders of the court may become necessary to carry it into effect." Page 14, § 24, referring to Mills *v.* Hoag, 7 Paige, 18; Johnson *v.* Everett, 9 Paige, 636; Quackenbush *v.* Leonard, 10 Paige, 131; Dickinson *v.* Codwise, 11 Paige, 189; Stovall *v.* Banks, 10 Wall., 583.

Merle *v.* Andrews, 4 Tex., 200, is more nearly, though not altogether, like the case under consideration than any of the cases heretofore adjudicated by this court — at least so far as we have been able to find. There the decree decides the right to property, reserving the adjustment of accounts for further action. This decree was held to be a final judgment.

*Bethel Coopwood,* for appellees.

WALKER, P. J. COM. APP.— The defendants having appealed, and assigning errors in the record for our consideration, we must first determine whether the supreme court has jurisdiction to entertain this appeal. If the judgment rendered by the district court is not a final judgment, as has been uniformly held, there does not lie an appeal from it.

The standard of the finality of a judgment was thus tersely stated by Justice Smith: "When the whole of

the matter in controversy is disposed of as to all the parties, then there is a final judgment, and not before, from which an appeal or writ of error can be taken." The right of appeal, it is said, is regulated and determined in many, perhaps most of the other states, by a similar requirement, as respects the finality of the judgment complained against, as that which exists in this state; giving rise, therefore, to numerous adjudications illustrative of the learning which bears upon the questions involved, and affording ample authority from which to deduce sound interpretation and proper judicial rules, if meager expositions in our own courts required us to look elsewhere for light. Our own decisions, however, are numerous on this subject, and many of them are cited with approval by text-writers, and seem to accord with the views of the courts of other states.

The results of adjudications upon the multiform phases which are presented under the application of the general rule as to the jurisdictional question under consideration, are shown by Mr. Freeman in his treatise on Judgments, from which liberal references may be made with advantage.

The definitions and tests which he deduces from the decided cases are not different, substantially, from those adopted by our supreme court. In Hanks v. Thompson, 5 Tex., 8, Ardrey, special judge, said: "A final judgment must mean, then, the awarding the judicial consequences which the law attaches to the facts, and determines the subject matter of controversy between the parties;" which definition was quoted with approval by Chief Justice Hemphill in West v. Bagley, 12 Tex., 34. The definition and test of a final judgment, given by Justice Smith, which has been already quoted, if it is more explicit, is not materially different in sense or meaning.

According to Mr. Freeman, "An interlocutory decree is one made 'pending the cause, and before a final hear-

ing on the merits.   A final decree is one which disposes
of the cause, either by sending it out of the court before
a hearing is had on the merits, or after a hearing on the
merits, decreeing either in favor of or against the prayer
of the bill.'   But no order or decree which does not pre-
clude further proceedings in the case in the court below,
should be considered final." Freeman on Judgments,
sec. 29.

The application of these principles and rules to discrim-
inate between these two classes of judgments or decrees
is simpler in cases known as cases at law than to those
which pertain to chancery jurisdiction and proceedings;
and the same author remarks in this connection, support-
ing his propositions with high authority, "Owing to
the number of orders or decrees necessarily entered in a
suit in equity to furnish all the relief to which the com-
plainant may be entitled, the courts have been frequently
obliged to determine which is *the final* decree.   So far as
any general distinguishing test can be gathered from the
numerous decisions, it is this: That if, after a decree has
been entered, no further questions can come before the
court, except such as are necessary to be determined in
carrying the decree into effect, the decree is final; other-
wise it is interlocutory.   But an order or decree, made for
the purpose of carrying a judgment or decree already
entered into effect, is not a final judgment or decree, and
cannot be appealed from as such."

Under these tests as to the finality of judgments and
decrees, it will be seen that the cases decided on the ques-
tion as to whether the judgment is final, or whether it is
interlocutory, will naturally range themselves into classes
in which the interlocutory character of the decree will re-
sult from a partial or incomplete disposition made as to *all*
who are *parties* to the suit; or it may be from the incom-
plete determination of *all the matters* which are in con-
troversy under the pleadings in the case; or it may result

from the indecisiveness of the judgment rendered in respect to the merits of the suit, because of its relating to a matter merely collateral to the merits of the subject of controversy. In all, and in any of these supposed instances, there would remain further action by the court to be taken, and to be shown by the record, in order to settle and determine the whole of the case which was instituted for a full and an entire adjudication. Many cases in our reports may be cited which illustrate the classification above made of the elements which constitute an interlocutory, and also of its correlative, a final judgment. See Green v. Banks, 24 Tex., 522; Moore v. Schooner Ann Maria, 11 Tex., 655; Ewing v. Kinnard, 2 Tex.,163; Hulme v. James, 6 Tex.,242; Wampler v. Walker, 28 Tex., 598; Boles v. Linthecum, 48 Tex., 220; Scott v. Allen, 1 Tex., 508; Davis v. Thomas, 5 Tex., 389; Hipp v. Hatchett, 4 Tex., 20; West v. Bagley, 12 Tex., 34; Hagood v. Grimes, 24 Tex., 15; Rodriguez v. Trevino, 54 Tex., 198.

The essential matters which are thus required to show a final judgment — such judgment as will be so regarded for the purpose of enabling the supreme court to take jurisdiction on appeal, — the judgment must in substance show intrinsically, and not inferentially, that the matters in the record had been determined in favor of one of the litigants, or the rights of the parties in litigation had been adjudicated. Therefore a judgment based on a verdict of a jury rendered for the defendant, "that he should recover his costs in that behalf expended," was held in Scott v. Burton, 6 Tex., 322, to be interlocutory and not a final judgment. See also Warren v. Schuman, 5 Tex., 441.

The principle, or rule, too, which requires the interest of *all* the parties to be disposed of, in order to characterize the judgment as a *final* one, is applied in this state to the case where the rights of the intervenor in the suit are

not disposed of. In Evans *v.* Pearre (4th vol. Law Journal, p. 333), the court held, where the judgment entered showed that the question of priority of right to the proceeds of the attached property was left open, to be disposed of by a further judgment and order of the court, to be made in the same case, that it was not a final judgment to support an appeal by the intervenor; and a motion to dismiss the appeal was sustained. And see also Stewart *v.* The State, 42 Tex., 242, where it was held that an intervenor could not appeal from a judgment dismissing his petition, until final judgment as to rights of plaintiff and defendant.

Where a judgment which is final is rendered, and a new trial *in toto* is granted, of course the status of the judgment is that it is interlocutory; the judgment which has been rendered goes for nothing so far as concerns any availability of that judgment, and the matters originally at issue remain to be disposed of by another trial; and if the order setting aside the judgment and granting a new trial is complained of, the revision of the ruling can only be had after the case is finally determined.

Cases may occur where a judgment which is final when rendered, and which therefore fully determines the case, yet, being set aside by a grant of a new trial, still, after a determination of the suit on a subsequent trial, on an appeal taken on the last and the real final judgment, to revise the action of the court in setting aside the former judgment, the last rendered judgment may be reversed, and the action of the court in setting aside the first judgment avoided by the appropriate reformation to be made by the appellate court. In Austin *v.* Townes, 10 Tex., 31, non-suit taken by plaintiff, which was set aside by the court; plaintiff permitted to amend his petition; the defendant, after the case was determined by a trial and final judgment rendered, urged as a ground of reversal the setting aside the non-suit. Justice Lipscomb, delivering

the opinion, while he held that the judge in the action taken by him exercised properly a discretion which is confided by the law to the court, and which will only be revised in cases of abuse in its exercise, intimates that where it ought to be revised for such abuse, and justice demands it, that the supreme court may overrule the decision of the district judge. And in Hughes v. Maddox, 6 Tex., 90, Justice Lipscomb said: "If the judgment in granting a new trial can be revised at all, it cannot be done until after a final judgment rendered by the court in the case, after a second trial. If the result should be unfavorable to the party who had been successful in the first, then, in some strong cases, it would be competent for this court to revise the correctness of the decision of the court in setting aside the first judgment."

It is obvious, then, that it is the substance, and not the form or the shadow, which is regarded in determining whether a judgment is final; that a judgment final in form, but which is set aside, either rightly or erroneously, becomes an interlocutory order, which, although it may be the subject of revision at some time or another, is not a final judgment and cannot be appealed from. Such orders, judgments and decrees belong, then, to that class which leaves still to be determined the merits of the controversy — the issues involved in the litigation.

The dissimilarity of the case now before us from the class just referred to is marked by the partial quality of the decree; first, in respect both to the extent to which the new trial is limited, confining it to but one branch of the case, and in express terms establishing as fixed and conclusive the judgment in its operation upon another branch of the case; and secondly, its partial quality in regard to its failure to determine in an absolute manner that branch of the case which decrees in favor of the plaintiffs, and as to which a new trial is refused.

This state of case involves the inquiry whether this

judgment falls within the classification of decrees deemed interlocutory, because the rights of *all* the parties are not adjudicated, and also of those which determine incompletely the entire matter involved, which is presented for adjudication.

Our statute makes no distinction as to proceedings at law or in equity, nor does it establish any qualification of the rule that the judgment must be final in the one proceeding more than in the other, in order to give jurisdiction. The 25th section of the judiciary act of the United States provides "that a *final* judgment or decree in any suit in the highest courts of law *or equity* of a state, in which a decision of the suit can be had, may in certain cases therein specified be re-examined, and reversed or affirmed in the supreme court of the United States." Freeman on Judgments, sec. 16. It is probable that, in other states besides our own, a like absence of discrimination is to be observed. In California the legislation on the subject seems to be embraced in their code; and judging from the language used by Freeman on Judgments, sec. 22, I infer that no distinction is made by the terms of the law as to final judgments, whether rendered in suits at law or in equity. Mr. Freeman remarks in that section: "The courts have experienced considerable difficulty in determining what, under the code, is a final judgment, in proceedings in the nature of suits in equity. Some of the decisions do not seem exactly in harmony with others." The author proceeds then to review and illustrate by his deductions of principles, the cases in which judgments have been held to be final, although not being or purporting to be full judgments and decrees which adjudicated all the rights of the parties; and he also noted several cases of a like kind, in which the judgments were considered interlocutory. It would be a tedious extension of this discussion to introduce here the result of this interesting and useful labor of that author;

it is sufficient to say that no principle or rule seems to be developed in the author's analysis of the cases to make any of the cases there quoted applicable to this. The general rules and principles before laid down in this opinion seem to encounter no qualification or exception under the record presented to us, whether the judgment be one rendered either at law or in equity. There exist none of the special elements here, which make it necessary to notice the various rules which seem to be established by the cases referred to by Mr. Freeman. The cases of Cannon v. Hemphill, 7 Tex., 184; McFarland v. Hall, 17 Tex., 676; Merle v. Andrews, 4 Tex., 400; Harmon v. Bynum, 40 Tex., 324, are examples of similar cases and questions to those referred to, and go to show that where the rights of the parties are fully adjudicated the finality of the judgment is not converted into one merely interlocutory, by connecting it with something further to be done, or which may be done; there is nothing in this case presenting any such questions.

Therefore the question is whether the record here can stand the test which is laid down as the correct one, to determine the finality of the judgment, as follows: "A decree can never be final until the party in whose favor it is can obtain some benefit therefrom without again setting the cause down for further hearing before the court, upon the equity reserved upon the coming in and confirmation of the report of the master, to whom a reference has been made [here the reference is to a court and jury on another trial], to ascertain facts which are absolutely necessary to be determined before the case can be finally disposed of by the court, or which the chancellor thinks proper to have ascertained before he grants any relief. But if the questions which can arise on the exceptions to the master's report are such as are merely incidental to the carrying of the decree into effect, it is final." Citing Johnson v. Everett, 9 Paige, 638; Freeman on Judgments, sec. 30.

According to the terms of the decree in favor of the plaintiffs, the court reserved whatever equity the defendants had by reason of the purchase money paid by them for future hearing. The defendants in their pleading prayed the condemnation and sale of the land to satisfy their claim for purchase money. The issue remained, therefore, notwithstanding the decree adjudging title to plaintiffs, whether or not the alleged lien was valid, and the lands subject to its enforcement. The plaintiffs, on the one hand, could derive no benefit from the decree until the future hearing; and, on the other hand, the rights of the defendants under their defense had not been determined by the decree. The judgment is not final; it does not determine the whole case; it does not dispose of all the matters involved in the suit; and it does not pretend to ascertain and determine the rights of *all* the parties. The tests established to determine the finality of a judgment are not fulfilled.

A judgment is not divisible. Under the statute but one final judgment can be rendered; and where a judgment was rendered against several defendants sued on a promissory note, and a new trial to part of the defendants was granted, *held*, that the legal effect of such an order was to so far vacate the entire judgment as to render the issuance of execution thereon invalid; nor is such a judgment final, from which an appeal can be taken. Long *v.* Garnett, 45 Tex., 400; citing Martin *v.* Crow, 28 Tex., 614; Hulme *v.* Janes, 6 Tex., 242.

The suggestion in the brief of counsel for the appellants, that the court "retained the defendants' *plea in reconvention*," not to ascertain whether he is entitled to reimbursement, because, as he says, that question is already passed upon by the court; but the plea, counsel urge, was retained to ascertain the amount to which the defendants are entitled. It is not necessary that we should define the character of that defense; we might say that it has not appeared to us in the light of a plea in

reconvention; it is wanting apparently in the essential elements of such a pleading as that is. We shall not pause to determine, nor even to closely consider, whether it be such a plea or not; the result, under the rules of law which we have presented in this opinion, must be the same, so far as relates to the question of the jurisdiction of the supreme court. Whatever may have been the actual nature of the defensive issue and plea, it constituted the defensive issues relied on by defendants, and it was left undetermined by the court, and its adjudication was requisite to constitute the judgment appealed from, a final judgment. There being no judgment rendered upon the verdict of the jury adjudicating all the matters involved in the suit, for that reason alone the same was interlocutory and not final; besides, if it had been, in fact, otherwise, a full determination of the merits of the controversy as to the rights of all the parties, its *final* character would have been metamorphosed to an *interlocutory* judgment in form and in substance by the act of the court in granting a new trial as to that part of the case which related to the defense referred to in the decree, and reserving as consummate the decree in favor of the plaintiffs. To what extent, if any, the decree thus attempted to be preserved intact, as a conclusive decree in favor of the plaintiffs, as to the title of the land, may be recognized as binding on another trial, need not be determined; indeed, the supreme court, for want of jurisdiction, can give no authoritative direction to another trial of the case. As counsel for both parties express in their briefs their wish for an expression from the supreme court on the future *status* of the case, and proceedings to be had, we will say that, in our view, proper practice requires that a trial should be had in the same way as if it had not heretofore been tried; and further, we do not regard the judgment as it stands after the dismissal of this appeal as such an one as will warrant its enforcement by execution or other

process until further proceedings shall be had in the district court. The condition of the case may be somewhat assimilated to a mistrial. Several years have elapsed since the trial, during which period the case properly belonged to the jurisdiction of the district court; and under the peculiar facts of the case, the district court might, we think, with justice allow the cause to be redocketed if necessary, and to hear the same on its merits, under such requirement of notice to be given of motion to docket the case as may be proper.

We conclude that this appeal must be dismissed for want of jurisdiction to entertain it.

DISMISSED.

[Opinion rendered October 7, 1881.]