### QUINN et al. v. DICKINSON et al.

(Court of Civil Appeals of Texas. Amarillo. Feb. 24, 1912. On Motion for Rehearing, March 29, 1912. On Motion for Further Rehearing, May 4, 1912.)

1. Courts (§ 63*)—Terms of Court—Statutes.

Act March 25, 1911 (Acts 32d Leg. c. 107), which carved the Seventy-Second judicial district out of the Sixty-Fourth, Fiftieth, and Thirty-Second districts, provides that terms of court shall begin in Lynn county on the second Monday in March and September, and in Lubbock county on the ninth Monday after the second Monday in March and September. The

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

second Monday in March came on the 13th. *Held* that, as it was impossible to hold the first term of court under the act, the terms in the various other counties could not be held under Act 1911, each circuit of the court in a district being, in a sense, an entirety; and hence, the judge being a de jure officer, it was proper for the judge of the Seventy-Second district to hold court in Lubbock county according to Act 1909 (Acts 31st Leg. c. 9), which defined the Sixty-Fourth district, of which that county was then a part, and which provided for the holding of the terms of court on May 29th and November 27th.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 208–217; Dec. Dig. § 63.*]

**2. COURTS (§ 47*)—ORGANIZATION—JUDGES.**

Although Act March 25, 1911 (Acts 31st Leg. c. 9), which created the Seventy-Second judicial district, did not apply to the first term of court to be held in the counties therein, the judge appointed thereunder was a de jure officer having authority to hold court in that district at the times prescribed by the former law, applicable when the counties were parts of other districts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 172; Dec. Dig. § 47.*]

**3. JUDGMENT (§ 650*) — CONCLUSIVENESS — MATTERS CONCLUDED.**

Where a former judgment between the parties of the present action did not dispose of all of the issues raised or all of the parties to the suit, it does not preclude another judgment on the merits.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1162; Dec. Dig. § 650.*]

**4. VENDOR AND PURCHASER (§ 275*)—VENDOR'S LIEN—RIGHT TO FORECLOSE.**

Three vendor's lien notes on land provided that upon default in any one of them all might be declared due. One having a subsequent claim on the land purchased the first of the series, paying interest on the others, and upon default on the first declared all of them due, purchasing the other two. *Held* that, as the payee was entitled to do this, the purchaser was also entitled to the same right; and one who purchased the land, subject to the vendor's lien notes, could not complain.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 772; Dec. Dig. § 275.*]

**5. TRIAL (§ 119*)—ARGUMENTS OF COUNSEL—ISSUES.**

In an action to enforce vendor's lien notes, one of the defendants, who claimed exemplary damages because of the appointment of a receiver of the land, answered with a plea in bar to the right of plaintiff to collect the notes. *Held*, that such plea did not entitle defendant's counsel to argue to the jury the manner of the plaintiff's purchase as bearing on the issue of exemplary damages.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 284; Dec. Dig. § 119.*]

**6. APPEAL AND ERROR (§ 1060*)—REVIEW—HARMLESS ERROR.**

In an action to enforce vendor's lien notes, where one of the defendants claimed exemplary damages because of the appointment of a receiver, the refusal of permission to allow his counsel to present in argument matters bearing on the right of exemplary damages was harmless, though erroneous, where the evidence did not warrant recovery of exemplary damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

**7. VENDOR AND PURCHASER (§ 260*)—LIENS—PRIORITY.**

Where the owners of a homestead transferred it, taking a vendor's lien note in part payment, the purchaser assuming in the deed debts of the owners as liens on the property, these liens were prior to the vendor's lien of the owner, even though they could not have been enforced against the homestead; for the owners of a homestead may convey it in settlement of their debts.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 664–669; Dec. Dig. § 260.*]

**8. HOMESTEAD (§ 96*) — LIENS — VENDOR'S LIENS.**

Where real property, subject to vendor's lien notes, becomes the homestead of the purchaser, the homestead is nevertheless subject to the lien notes.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 147–153; Dec. Dig. § 96.*]

**9. MECHANICS' LIENS (§ 173*)—PRIORITY—TIME OF LIEN.**

Where, at the time of sale, a building on land was wholly unhabitable, because improvements previously begun had not been completed, the lien of a contractor who completed the improvements after the sale does not relate back to the beginning of the improvements, but dates only from the time he began work.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 304; Dec. Dig. § 173.*]

**10. MECHANICS' LIENS (§ 198*)—PRIORITY OF LIEN.**

While the Constitution provides for a preference lien for mechanics and materialmen, this right, in case of improvements on land already incumbered, can be exercised against prior lienholders only when the improvements can be removed without damage to the freehold, so that the lien for improvements which cannot be removed from the freehold is inferior to prior liens.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 348–355; Dec. Dig. § 198.*]

**11. COSTS (§ 32*)—TAXATION OF COSTS.**

In a proceeding to enforce vendor's lien notes on land, where it appeared that junior liens of other defendants who had placed improvements on the land, increasing its value, could not be satisfied, the costs of the proceeding will be imposed on plaintiffs, although they are successful.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig. § 32.*]

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by W. K. Dickinson and others, as partners, against J. H. Quinn and wife, J. M. Patton, Agnew & Agnew, and others. From a judgment for plaintiffs, the defendants named appeal. Modified and affirmed.

H. C. Ferguson, Dillard & Moore, and W. D. Benson, all of Lubbock, for appellants. Bean & Klett and R. A. Sowder, all of Lubbock, for appellees.

GRAHAM, C. J. This appeal is before us from a judgment rendered in the district court of Lubbock county on June 7, 1911, and during a term of court held in that county, and which convened on May 29, 1911, and adjourned on the 10th day of June of the same year. Under the first assign-

ment of error in the brief of appellants J. H. Quinn and wife, and also under the first assignment of error in the brief of appellant J. M. Patton, contention is made that the judgment appealed from is void (1) because the same was rendered at a term of the court not authorized by law; and (2) if the term of court at which the judgment was rendered was authorized by law, the judge who presided was not empowered so to do.

These contentions are based on the following state of facts: By an act of the Thirty-Second Legislature, approved March 25, 1911, found at page 212, Regular Session Acts, the Seventy-Second judicial district was created, and the Thirty-Second, Fiftieth, and Sixty-Fourth judicial districts were also reorganized to meet the conditions arising from the fact that the counties composing the Seventy-Second judicial district had been taken from said three districts. The Seventy-Second district, as created, is composed of Lynn, Dawson, Yoakum, Terry, Lubbock, Crosby, Garza, and the two unorganized counties of Hockley and Cochran, which are by said act attached to Lubbock county for judicial and all other purposes. The counties of Lynn, Yoakum, Lubbock, Terry, and the two unorganized counties of Hockley and Cochran, having formerly formed a part of the Sixty-Fourth district, while the counties of Dawson and Garza had formerly formed a part of the Thirty-Second judicial district, and the county of Crosby had formerly been a part of the Fiftieth judicial district.

[1, 2] Prior to the passage of the act of March 25, 1911, the Sixty-Fourth judicial district was operating under a law passed in 1909 (Acts 31st Leg. c. 9), reorganizing and establishing the same, and the Thirty-Second judicial district was also operating under a law passed in 1909 (Acts 31st Leg. c. 8), reorganizing and establishing it; while the Fiftieth district was operating under a law passed in 1905 (Acts 29th Leg. c. 9), reorganizing and establishing it. It will thus be seen that for information as to the time at which court, under the law, could be held in the several counties now in the Seventy-Second judicial district, prior to the passage of the act of March 25, 1911, it is necessary to look to the acts under which the Sixty-Fourth, Thirty-Second, and Fiftieth judicial districts were operating.

The act of March 25, 1911, provides for the judge of the Seventy-Second judicial district to begin holding court in Lynn county; the terms under the act requiring the holding of courts in said district as follows: In Lynn county on the second Monday in March and September and continue in session three weeks, and an inspection of the calendar will show that the second Monday in March and September, 1911, came on March 13th and on September 11th. It provides for the court to be held in Dawson county on the third Mondays after the second Mondays in March and September, and an inspection of the calendar will show that these terms, as thus provided for, fell on April 3 and on October 2, 1911. Provision is made for holding court in Yoakum county on the fifth Mondays after the second Mondays in March and September, and an inspection of the calendar will show that these terms for 1911, under the act, began on April 17 and October 16, 1911. Provision is made for holding court in Terry county on the seventh Mondays after the second Mondays in March and September, and the calendar shows that these terms fell on May 1 and October 30, 1911. The act provides for terms of court in Lubbock county on the ninth Mondays after the second Mondays in March and September, and an inspection of the calendar shows that these terms for 1911 began May 15 and November 13, 1911. Provision is made for holding court in Crosby county on the fifteenth Mondays after the second Mondays in March and September; and the calendar shows that these terms for the year 1911 would have begun on June 26 and December 25, 1911. This act provides for the holding of terms of court in Garza county on the seventeenth Mondays after the second Mondays in March and September, and the calendar shows that these terms for the year 1911 fell on July 10, 1911, and January 8, 1912.

An inspection of the act of 1909, creating the Sixty-Fourth and Thirty-Second judicial districts, and the act of 1905, creating the Fiftieth judicial district, will show that, prior to the creation of the Seventy-Second judicial district, terms of the district court were required to be held in Lynn county in 1911 on May 15th and November 13th; in Dawson county on May 8th and December 4th; in Yoakum county on April 24th and October 23d; in Terry county on May 1st and October 30th; in Lubbock county on May 29th and November 27th; in Crosby county on June 29, 1911, and January 22, 1912.

As the act creating the Seventy-Second judicial district did not become a law until March 25th, and under its requirements a term of court should have been held in Lynn county on March 13th, it is thus made to appear that it was impossible for the terms of the act to be complied with, at least as to this county, for the spring term of 1911; and, as, under the law as construed by the decisions of our courts, each circuit of the courts in a judicial district is, in a sense, regarded as an entirety, it follows that it was improper for the judge of the Seventy-Second judicial district to have held court in either of the counties in that district for the spring term in accordance with the provisions of the act of March 25, 1911, as was expressly held in the case of Ex parte L. W. Thompson, 57 Tex. Cr. R. 437, 123 S. W. 612, and in Nobles v. State, 57

Tex. Cr. R. 307, 123 S. W. 126, and in Bowden v. Crawford, 103 Tex. 181, 125 S. W. 5.

The district having been created, however, and a judge of said court having been appointed and properly qualified, there was a de jure judge for each of said counties composing the Seventy-Second judicial district, and it became his duty, and he was authorized and empowered under the Constitution and the law, to hold the spring terms of court in each of said counties; but, to do so under the decisions above referred to, they must be held at the time provided by law prior to the passage of the act creating the Seventy-Second judicial district, for the reasons fully stated in the decisions above quoted, as well as in the case of Womack v. Womack, 17 Tex. 1.

For the reasons above stated, and under the authorities cited, we hold that the term of court at which the judgment appealed from was rendered was legally and constitutionally held, it having been held on May 29th, the date provided for holding said court in said county under the act in existence prior to the passage of the act creating the Seventy-Second judicial district; and we also hold that the judge who presided over said court had constitutional and statutory authority so to do, and for these reasons the assignments mentioned will be overruled.

[3] Under assignments urged in this court by appellants J. H. Quinn and wife, it is contended that the judgment appealed from is void, in that the trial court had no power to render the judgment; there having been a final judgment rendered in this cause by the district court of Lubbock county at a former term, which judgment, rendered at the former term, had in no way been vacated or set aside or appealed from. We have inspected the record carefully, and have reached the conclusion that this contention is not sustained by the record. There was a judgment rendered in this cause by the district court of Lubbock county at a former term; but the record shows conclusively that said judgment failed to dispose of one of the parties to this suit at that time, and also to dispose of the issues raised and presented by the record as a means of bringing that party into this case, and for these reasons we hold that the judgment rendered at a former term of the district court of Lubbock county was not a final judgment, and did not preclude the trial court from proceeding to try the case upon its merits, as if said judgment had not been rendered. Jacob Linn and Wife v. C. Arambould, 55 Tex. 611; T. & P. Ry. Co. v. Ft. Worth Street Ry. Co. et al., 75 Tex. 82, 12 S. W. 977; Riddle v. Bearden, 36 Tex. Civ. App. 97, 80 S. W. 1061. It follows that the assignments based upon the exclusion of said judgment as evidence, as well as upon the action of the trial court in overruling the plea in the nature of res adjudicata, should be overruled. Having disposed of the jurisdictional questions raised, we now proceed to a disposition of the appeal upon its merits.

The record shows this suit originated in the district court of Lubbock county by W. K. Dickinson, T. P. Gibson, and J. D. Quick, as partners and plaintiffs, suing on three notes for $1,716.66 each, one note for $2,000, one note for $846 as well as other small claims, not necessary here to be mentioned, and also praying for a foreclosure of liens, hereinafter mentioned, on real estate situated in the town of Lubbock; that all other parties to this appeal were made parties defendant to the suit, at plaintiff's instance, on allegations that they were severally setting up some claim or interest in the real estate, but that such claim or interest was inferior to and subject to the claim asserted by plaintiff.

The record shows that each of said defendants appeared and by proper pleadings filed in the court below, in the form of cross-actions against plaintiffs and against each other, sought judgment for their respective claims in debt, and also sought a foreclosure of their respective liens on the real estate; each in effect asserting his lien to be a prior one to that of plaintiff, and to that of each of the other defendants, on the property involved.

The defendants Quinn and wife, among other things, pleaded the invalidity of the deed executed by them to Patton, contending that the same was not executed voluntarily by the wife, the property being the homestead at the time of the conveyance, and prayed, among other things, for a cancellation of the deed and for title and possession of the property. They also pleaded the former rendition of a final judgment in this case as a bar to further proceedings herein and during the trial sought to introduce a copy of said judgment as evidence, which was excluded by the court.

The appellant Patton, among other things, sought a recovery against plaintiff for actual and exemplary damages, alleged to have arisen as a result of the appointment of a receiver of the property in controversy.

Aside from the above issues, the principal controversy on the trial and at the rendition of the judgment grew out of the conflicting claims as to priority of liens of the respective parties to the suit.

The record shows, without any conflict in the evidence, that on and prior to September 18, 1909, B. D. McLarry owned lots 16 and 17, in block No. 103, in the original town of Lubbock, Tex., on which was situated a small wooden building, which had prior thereto and was then being used as a boarding house or a hotel; that on that day he sold and conveyed said premises to J. H. Quinn by warranty deed on its face showing a consideration of $4,350, accepted by Mc-

Larry as cash, Quinn also executing and delivering to McLarry three vendor's lien notes for $1,716.66 each, due one, two, and three years after their dates, respectively, each providing for payment of interest annually, and also providing, in substance, that on failure to pay the interest or any part of either of said notes as the same matured all unpaid on all of them ;should become due and payable, the notes each on their face showing that 'they were vendor's lien notes, given as a part of the purchase price for the lands in controversy, and retaining an express lien on their face, the notes being signed by Quinn and payable on their face to McLarry or order; that thereafter, and after the maturity of the first one of said notes, plaintiffs, at that time holding other indebtedness against Patton, who then owned the property as a means of protecting themselves, purchased from McLarry the first one of the said $1,716.66 notes and paid him the accrued interest on the other two, and elected to and did declare the three notes due and payable, and thereafter also purchased from McLarry the remaining two of said $1,716.66 notes, and at the same time took a transfer of the superior title to the lands in controversy theretofore resting in McLarry, and declared all of said notes due; that on December 28, 1909, J. H. Quinn and wife sold and conveyed, by warranty deed, the same property to J. M. Patton for a total consideration of $13,505.44, $2,908 of which, on the face of the deed is acknowledged as having been paid, and which was actually paid in other property, and the balance of the total consideration, as expressed on the face of the deed, was paid, in substance, as follows: The assumption of one note for $2,000, describing it, it being a note at that time held by plaintiffs and owed by J. H. Quinn; one note for $846, describing it, it also being a note at that time owed to plaintiffs by J. H. Quinn and J. M. Patton; three notes for '$1,716.66 each, describing them, they being notes then held by McLarry, but thereafter purchased by 'plaintiffs; one note for $476.13, describing it, it being the note sued on herein by the Lubbock Hardware & Furniture Company.

Patton also assumed on the face of said deed the payment of $136.31, which is therein 'stated to be due as interest on the $846 note and on the $467.13 note. The deed also shows that, as a further part consideration for said lands, J. M. Patton executed and delivered to J. H. Quinn a vendor's lien note for $2,000; it being the note sued on herein by J. H. Quinn. The deed shows upon its face that a lien was retained to secure a payment of the unpaid purchase money mentioned therein.

The record also shows that during the time Quinn owned the property it was the homestead of himself and wife, and that during that time he added largely to the house, and other improvements on the premises, at an expense of several thousand dollars, and in doing so he incurred indebtedness represented by the $2,000 note and the $846 note sued on herein by plaintiffs, as well as the $467.13 note sued on herein by the Lubbock Hardware & Furniture Company; the indebtedness represented by said notes having been largely incurred, if not wholly so, for materials and labor in making said improvements on said premises.

The record further shows that on October 30, 1909, and at a time when the premises were the homestead of J. H. Quinn and wife, Quinn executed and delivered, for 'the benefit of plaintiffs herein, a deed of trust on the entire property to secure the payment of the $2,000 note sued on by plaintiffs; the deed of trust on its face further providing for the issuance of insurance on the property and the protecting of the payment thereof, as well as for other indebtedness that might become due plaintiffs by Quinn.

The record further shows, without controversy, that when Patton acquired the property Quinn had begun certain improvements thereon which were then in an unfinished condition to such an extent that the house was not suitable for proper occupanᴄ. and that Patton, about the 1st or 2d of January, 1910, entered into a contract with Agnew & Agnew, contractors and builders, to do certain improvements on the house, which they did at a contract price of about $1,500, thus making the premises desirable for habitation, and on which contract price there remained unpaid on May 3, 1910, $1,064.28, and that on that day a contractor's and materialman's lien was properly filed for record by Agnew & Agnew, thereby fixing a lien on the property as of 'date about January 2, 1910.

It is further shown conclusively by 'the record that one H. C. Ferguson owned or had some interest in the furniture 'and fixtures in the hotel at the time this suit was filed, as well as 'at the time of the final trial below, and that soon after the suit was filed below the Lubbock Hardware & Furniture Company caused 'said Ferguson to be made a party to this suit, on allegations that said Hardware & Furniture Company had a lien on said furniture' and fixtures, and that said Ferguson was asserting a right or claim thereto, which was inferior to that of the Hardware & Furniture Company; and thereafter plaintiffs caused a receiver to be appointed to take charge, not only of the real estate but the furniture as well, and that Ferguson alone appealed from the order appointing the receiver, and on a hearing in the appellate court the receivership was vacated; and the record further shows that thereafter said Ferguson, on his own motion, was dismissed from this cause as not being a necessary and proper party.

The case was tried below before a jury, but at the conclusion of the introduction of

the testimony and the argument of counsel, there being no issue of fact as to the amount of the several claims for debt, or as to who owed the same, the trial court peremptorily directed a verdict as to each of said claims for debt, except as to the cross-action of Patton against plaintiffs for procuring the receivership, this issue being by the court submitted to the jury on both actual and exemplary damages, and the jury returned a verdict for $50 actual damages, and against Patton for exemplary damages. The jury also returned their verdict on the items of debt as directed by the court, and in their verdict declared a lien as to said debts, respectively, on the property in controversy; neither the verdict, however, nor the charge of the court, indicating any priority as to said lien.

On this verdict, judgment was rendered by the court; and the court in his judgment ordered a foreclosure of the liens on the property, a sale thereof, and in the judgment fixed the order in which the several judgments should be paid from the proceeds arising from the sale, and on the order of payment thus fixed in the judgment arises the principal controversy on this appeal.

The trial court placed the judgment representing the amount due on the three notes for $1,716.66 as a first lien on all the property in the condition in which it stood at the time of the trial. He then places the judgment representing the $2,000 note that had been given to the plaintiffs herein by Quinn, the $846 note that had been given by Quinn to the plaintiffs herein, the $476 claim held by the Lubbock Hardware & Furniture Company, and the $2,000 note, executed and delivered by Patton to Quinn, and the claim in favor of Agnew & Agnew in another class, and ordered that they prorate in the proceeds arising from the sale after the payment of the judgment representing the three notes for $1,716.66 each.

While the judgment rendered by the trial court does not in express terms dispose of the question of costs, the record shows that on June 10th a motion was made by Quinn and wife, Agnew & Agnew, and J. M. Patton to retax the costs, in response to which the court entered its order, taxing certain items of cost against the plaintiffs below, and striking out other items, not specifically mentioned, as being overcharges.

This appeal was prosecuted by Agnew & Agnew on a cost bond, by Patton on a pauper's oath, and by Quinn and wife on a pauper's oath; the plaintiffs below and the Lubbock Hardware & Furniture Company being appellees herein. Each appellee and each appellant have filed briefs in this court, pressing their various contentions; but, under the view we take of the disposition that should be made of the case, we will not discuss the assignments of error presented by each of the appellants and cross-assignments of appellees separately, and will here now overrule all of them, not expressly hereinafter disposed of.

[4] Several of the assignments of error of the appellant Patton are based on the contention that the plaintiffs below had not the legal right, after purchasing the $1,716.66 note first maturing, at its maturity, and then paying the accrued interest on the other two, to exercise the option of declaring all three of them due, and then buying the other two and proceeding to a judgment and to a foreclosure on the three notes before the maturity of the last two according to their face. We cannot concur in this contention for the reason that, as we view the law, the payors of said notes having failed to pay the note first maturing and the interest on the other two, McLarry had the right and power to declare them all due; and, as the plaintiffs herein, as a means of protecting the property, on which they also were asserting a lien, against the prior lien securing this series of notes, saw fit to purchase one of the notes first and pay the interest on the other two, and thereafter to purchase the remaining two, this subrogated the plaintiffs, we think, to all the rights formerly held by McLarry; and the fact that plaintiffs had purchased the notes cannot in any way be held to inure to the benefit of the persons who were legally liable to pay the same, and we therefore overrule the assignments of appellant Patton, based upon the contention mentioned.

[5] One of the assignments of appellant Patton is based on the action of the trial court in refusing to permit Patton's counsel to argue to the jury the time and circumstances under which plaintiff below purchased the three $1,716.66 notes; said appellant contending that he had a right to make said argument in support of his claim for actual and exemplary damages. While the record shows that appellant Patton pleaded the time and circumstances under which these notes were purchased by plaintiff below, an inspection of the record will show that said pleading was in the nature of a plea in bar against the right of plaintiff to proceed to collect said notes, they not then being due, as he contended, and there are no such allegations as would tend to support a recovery for any damages, the only allegations in the pleadings of appellant Patton looking to the recovery of damages being those in connection with the procurement of the appointment of a receiver; and, as we have held that plaintiff below had the right to purchase the notes and proceed to judgment thereon, no injury or damage could be recoverable by appellant Patton as a result thereof.

Under other assignments, the appellant Patton complains that the trial court erred in his charges, given to the jury, on actual and exemplary damages, and in refusing to give special charges, requested by appellant

Patton's counsel, bearing upon these issues. Without discussing the assignments separately, we will state that we have examined the charges as given by the trial court on these issues and those requested by appellant Patton's counsel, and have reached the conclusion that the charges given by the trial court correctly and sufficiently cover the issues presented by the record; and there was therefore no error in the charges as given, or reversible error in refusing the special charges requested.

[6] We have carefully read the entire statement of facts in this case, and therefrom have reached the conclusion that there is no such testimony to be found in the record as would support a finding in appellant Patton's favor for exemplary damages; and it therefore follows that, even if the trial court's charge on this issue was not wholly perfect (which we do not mean to intimate), and the requested charges on this issue were perfect, no reversal would follow, for the reason that such error, if any, becomes a harmless one.

[7, 8] Under various assignments of error presented in different forms, appellants Quinn and wife present the proposition that the $2,000 vendor's lien note, executed by Patton and delivered to them as a part of the purchase price for their homestead, should have been, by the trial court, given priority over the indebtedness assumed on the face of the deed to Patton, on the ground that the premises were the homestead of Quinn and wife at the time of said conveyance. We are unable to concur in this contention, for the reason that, as we view the matter, the other indebtedness assumed by Patton in the purchase, and named on the face of the deed and secured by the vendor's lien retained therein, occupied the same position as if notes had been executed by Patton, payable to Quinn and wife, covering said several items, and then been by Quinn and wife transferred to the persons, respectively, who sued upon them herein.

As to the three notes for $1,716.66, they were certainly a prior lien on the property, and no homestead right of Quinn and wife attached as against them; and while, as to the other indebtedness assumed on the face of the deed from Quinn and wife to Patton, the record shows that, prior to that conveyance, no legal lien had attached to the property; the laws of this state do not prevent the owners of a homestead from conveying the same in settlement of their debts, and the record in this case shows clearly that is what was done by Quinn and wife as to the items assumed by Patton on the face of the deed to him.

Conditions can arise by which the owner of premises, who conveys them and allows part of the purchase-money notes to go into the hands of third persons, for value and without notice, and retains part of the purchase-money notes to himself, will be held to hold a lien on the premises, subject to the prior lien as the notes in the hands of innocent purchasers; but, as no such contention is made in this case by the holders of the purchase-money notes or indebtedness not held by Quinn and wife, it becomes unnecessary for us to dispose of that question in this case.

[9] Several of the assignments of error of the appellants Agnew & Agnew are based upon the contention that, as improvements had been begun on the property by former contractors before the sale from Quinn and wife to Patton, and that at the time their contract for labor and material was made with Patton the premises were uninhabitable, and their labor and material was necessary to make them so, their lien should date from the time the improvements were begun by former contractors, and that they (Agnew & Agnew) were entitled to priority over all other creditors and lienholders to the extent of the enhanced value of the premises resulting from the improvements placed thereon, not only by themselves, but by the former contractors.

Appellants Agnew & Agnew cite as authority for this contention the case of Hotel Co. v. Griffith, 88 Tex. 574, 33 S. W. 652, 30 L. R. A. 765, 53 Am. St. Rep. 790. Properly construed, we think this decision does not support the contention made; and, while it is true that in that case it was held that a subsequent subcontractor was entitled to foreclose his lien as of the date the original contract for the construction of the building was made, it is clearly shown in the case that this resulted from the fact that the original contract provided for the completion of the entire building according to certain plans and specifications, and also provided a fund with which to pay for all of said improvements according to plans and specifications; and it was therefore held that the subcontractor was subrogated to the rights of the original contractor as to the time of fixing his lien.

That appellant Agnew & Agnew's contention is not sustained by the decision cited, and that we are correct in our construction thereof, we cite the case of Sullivan v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S. W. 307, wherein the Hotel Company Case, supra, is discussed by the Supreme Court. We therefore hold that the fact that the improvements on the premises were in an unfinished condition at the time Agnew & Agnew made their contract would not result in a lien being fixed upon the property and covering all the enhancements of value placed thereon from the date the improvements were begun by the prior contractors.

[10] Under other assignments, Agnew & Agnew insist that they at least have a prior lien to all other creditors and prior lienholders as to the value placed upon the premises

by their material and labor, and that therefore the trial court erred in placing their lien on a parity with those mentioned in the deed from Quinn and wife to Patton, and the case of Hotel Company v. Griffith is again cited in support of this contention.

While the Constitution of this state expressly provides for a preference lien for mechanics and materialmen, not only on improvements made by them, but on the lands on which the same are situated, and statutes have been passed preserving the same and providing for the enforcement thereof; and it has been expressly held, as we view the matter, by the Supreme Court of this state that this right can be exercised against prior lienholders on the premises and improvements placed by the contractor do not become such a part of the realty as that their removal or segregation from the realty would result in an injury or deterioration in value of the realty, including the improvements thereon as they existed prior to the fixing of the lien by the contractor.

The record in this case shows without controversy that the materials furnished and labor performed by Agnew & Agnew under their contract resulted in enhancing the value of the entire property from $1,500 to $2,000; but the record also shows with equal conclusiveness that the improvements placed upon the property by Agnew & Agnew consisted of paints, papering the walls, and other similar improvements that cannot be detached from the building in such way as to be of any value to Agnew & Agnew without materially injuring the property as it stood prior to said improvements being made (that is, the record shows conclusively that the improvements placed upon the property by Agnew & Agnew became a part and parcel of the realty as it existed prior to said improvements); and therefore we hold that, while under the Constitution and the law Agnew & Agnew have a lien to the extent of the amount unpaid on their indebtedness on all the improvements and the land, the same is subject to and inferior to the liens that were in existence at the time they made said improvements, and we think this conclusion is clearly sustained by the Supreme Court in its decision in the case of Sullivan v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S. W. 307, in the case of Citizens' National Bank of Waco v. Strauss, 29 Tex. Civ. App. 407, 69 S. W. 86, by the Court of Civil Appeals, and in which a writ of error was refused by the Supreme Court, by the case of Watson et al. v. Markham & Reese, 33 Tex. Civ. App. 476, 77 S. W. 660, and Hubbell v. Texas Southern Railway Co., 126 S. W. 313. An inspection of the last case mentioned will show that laborers on railroads are placed in a class different from materialmen and laborers in other lines of employment.

There is an additional reason why the lien of Agnew & Agnew could not attach and be operative at the time the premises were owned by Quinn and wife, and that is the premises at that time were the homestead of Quinn and wife; and no such contract was entered into as is provided by the Constitution and law to fix such a lien on the homestead.

Appellees W. K. Dickinson, T. P. Gibson, and J. D. Quick and the Lubbock Hardware & Furniture Company, under proper cross-assignments, insist that the trial court erred in placing the claim of Agnew & Agnew on the same footing as the claims secured on the face of the deed from Quinn and wife to Patton, and in the light of the reasons above given and authorities cited, in disposing of Agnew & Agnew's assignments, it follows that the trial court erred in so doing.

Finding no other errors in the record, the judgment of the trial court will be here reformed, so that the claim of Agnew & Agnew will be placed in class C, and share in the proceeds arising from the sale of the property after those placed in class A by the trial court, and the other claims placed in class B by the trial court, have all been fully paid; and it is so ordered.

[11] It appearing from the record, without controversy, that the property was largely enhanced in value in the use of materials represented by the claim of the Lubbock Hardware & Furniture Company, as well as the claim of Agnew & Agnew, and that Quinn and wife also expended funds in the improvement of said premises which, because of the deterioration in value thereof, will in all likelihood be lost to each of them, and that the plaintiff below, as a result of having a prior lien thereon, will reap the benefits thereof, we think that, as a matter of equity, the entire costs of this proceeding, both below and in this court, should be taxed against and paid by the plaintiffs below; and it is so ordered.

### On Motion for Rehearing.

On February 4, 1912, in a written opinion, this court reformed and affirmed a judgment rendered in this cause by the district court of Lubbock county, and the case is now before us on motions for rehearing, filed herein by Quinn & Quinn, by Agnew & Agnew, and by J. M. Patton, and on a motion, filed herein by Dickinson, Gibson & Quick, to reform our judgment as to costs.

An inspection of the record has led us to the conclusion that our former judgment was erroneous, in so far as we taxed the costs in this court and the trial court against Dickinson, Gibson & Quick, which arose as a result of H. C. Ferguson having at one time been made a party to the suit in the trial court; he afterward having been dismissed as a party therein.

All motions for rehearing will therefore be overruled, and the judgment formerly rendered by us be allowed to stand, except that

the costs incurred in the trial court as a result of H. C. Ferguson having been made a party, will be taxed against Agnew & Agnew, who brought said Ferguson into the case; and it is so ordered.

### On Motion for Further Rehearing.

On a former day of this term, by order of this court, the costs incurred below in this cause incident to bringing H. C. Ferguson into this case were taxed against Agnew & Agnew. Through a motion filed in this cause by Agnew & Agnew, our attention has been called to the fact that H. C. Ferguson was brought into the case in the trial court by the Lubbock Hardware & Furniture Company, and for this reason the motion of Agnew & Agnew to retax the costs as to this item is granted, and the order heretofore entered, taxing said item of costs against Agnew & Agnew, is set aside, and said costs are here taxed against said Lubbock Hardware & Furniture Company.