## COMPTON v. W. F. & J. F. BARNES LUMBER CO. et al.

### No. 1736.

Court of Civil Appeals of Texas. Waco.

Oct. 1, 1936.

Rehearing Denied Dec. 10, 1936.

Naman & Howell and W. J. Boswell, all of Waco, for appellant.

Nat Harris, Mabel Grey Howell, and W. L. Eason, all of Waco, for appellees.

ALEXANDER, Justice.

On March 6, 1930, F. M. Compton conveyed to Air Services, Inc., 223½ acres of land known as East Waco Air Port and retained a vendor's lien thereon to secure the payment of a note in the sum of $25,-000 and interest. Thereafter, on June 21, 1930, Air Services, Inc., was adjudged a bankrupt and the trustee was ordered to sell the land in question with the improvements thereon free of liens. Compton bid the sum of $28,600 for said property, the same to be credited on his claim. This was the highest bid received, and the sale was reported by the trustee September 2, 1930. Some litigation arose over the validity of Compton's claim, and as a result the sale to Compton was not confirmed until March 1, 1932. In the meantime the trustee in bankruptcy leased the property in question to Eason & Ockander for the

sum of $5 per month so long as the trustee should remain in possession thereof. The terms of the lease contract were set out in a letter, which contained the following provision: "This will authorize you to remove therefrom all improvements erected thereon by you." Eason & Ockander, during the time they occupied the premises and before the confirmation of the sale to Compton, tore down two old barns on the premises and used the lumber therefrom, together with some other used lumber on the premises and some new lumber purchased by them on open account from W. F. & J. F. Barnes Lumber Company, in erecting a hangar on the premises. After the confirmation of the sale and the conveyance of the property from the trustee in bankruptcy to Compton, the said Compton learned for the first time that Eason & Ockander had an agreement with the trustee allowing them to remove improvements erected by them. He then refused to allow Eason & Ockander permission to remove the hangar. Thereafter, Eason, as the successor to the firm of Ockander & Eason, gave the W. F. & J. F. Barnes Lumber Company a chattel mortgage on the hangar to secure the payment of the money due for the lumber purchased by said firm from said lumber company and used in erecting said hangar. This suit was brought by the Lumber Company against Eason to recover its debt and against Eason and Compton to foreclose its chattel mortgage lien on the hangar in question. The trial court in a trial without a jury entered judgment for plaintiff against Eason for the debt and against all of the defendants foreclosing its lien on said hangar, but as a condition precedent to the right to remove said hangar, the judgment decreed that the plaintiff should be required to pay Compton the sum of $200 for the lumber used off of the premises in the erection of the hangar. Compton appealed.

In addition to the facts above recited, the trial court made the following material findings: "That the said Ockander and Eason secured permission from F. M. Compton to tear down two barns then on the land and use the material in the construction of the new hangar building or barn. One of these old barns, which was known as the 'hay barn' on said land, was larger than the barn or hangar building in question. The other was a smaller building known as the 'fruit shed.' Said Ockander and Eason also secured permission from F. M. Compton to use in the construction of said new building some stacked second-hand lumber, for which Mr. Compton had paid about $200.00 and which lumber was located upon the land in question; that said Ockander and Eason with the permission of Mr. Compton destroyed the two old barns during the construction of the new barn or hangar and used some of the material from the old structures and the lumber on the land in the new structure; that the value of such material used was $200.00; that after the new building was completed by Ockander and Eason only a small stack of a few pieces of lumber was left from the two barns which were destroyed and the stack of lumber belonging to F. M. Compton on the land as aforesaid; that F. M. Compton understood at the time he consented to the destruction of the two old barns upon the land and their use in the construction of the new building and the use of his stacked lumber then on the land by the said Ockander and Eason that the new building would remain as a permanent part of the real estate; that F. M. Compton had no notice of any claimed right to remove said hangar building or barn in question until after he received deed to said land from the trustee in bankruptcy under date of April 28, 1932; that Compton knew that Eason had rented the premises from the trustee and knew of the building of the barn (hangar) in question, but did not know of the agreement by Mr. Eason with the trustee that Eason should have the right to remove the improvements placed upon the property by him; that the hangar building or barn in question is built upon concrete foundation embedded in the earth, to which the super-structure is bolted to iron bolts bedded in the concrete foundation, and a portion of the interior of said building is of concrete flooring. I find the value of said barn as it now stands to be $800.00; that the value of the material placed therein from the pile of lumber and old barns is $200.00 and the balance of $600.00 in value to be the interest of defendant Eason in said barn."

The Lumber Company can have no greater right in the building in question than did Eason & Ockander under whom the Lumber Company claims. For the purpose of a proper disposition of this case, it may be conceded that as between

the trustee as the owner of the land and the tenant the contract was sufficient to authorize the tenant to sell, mortgage, or remove improvements erected by him on the rented premises. 26 C.J. 710. But at the time the improvements were erected by the tenant, Compton had a vendor's lien on the land, and in addition thereto he had made a bid for the purchase of the land, which bid had been reported by the trustee and was awaiting confirmation by the bankruptcy court. Compton, therefore, had a very substantial interest in the property. He was not a party to the agreement between said trustee and the tenant. The tenant procured from Compton permission to tear down two of the old barns located on the premises and covered by Compton's lien and to use the material therefrom, together with some loose lumber belonging to Compton, in the construction of the new building. The trial court found specifically that "Compton understood at the time he consented to the destruction of the two old barns upon the land and their use in the construction of the new building and the use of his stacked lumber then on the land by the said Ockander and Eason that the new building would remain as a permanent part of the real estate; and that F. M. Compton had no notice of any claimed right to remove said hangar building or barn in question until after he received deed to said land from the trustee in bankruptcy." It is therefore apparent that Compton not only did not consent to the agreement that the building when erected could be removed from the premises, but that he allowed the buildings covered by his lien to be torn down and the material therefrom, together with other lumber belonging to him, to be used in the construction of the new building, with the understanding that it would become a part of the land and would be subject to his lien. There are cases in which it is held that such agreements between the mortgagor and his tenant are binding on an existing mortgagee, but those are cases in which enforcement of the rule was necessary in order to protect the rights of innocent third parties, and it was made to appear that no injury would result to the mortgagee. Here the Lumber Company that is insisting on such rule is in no better position than the tenant under whom it claims, and it is apparent that it would be inequitable to the mortgagee to enforce such rule. In fact, such holding would be in plain violation of the understanding on the part of Compton at the time he gave his consent to allow the tenant to use the lumber then on the land in constructing the new building. Under these circumstances, we hold that the agreement between the mortgagor and the tenant allowing the tenant to remove improvements constructed by him was not binding on the pre-existing mortgagee as to the particular building in question. 26 C.J. 684, § 49. The loose lumber belonging to Compton and that taken from the barns upon which he held a lien is now in place in the new building, and said building is so constructed that in the absence of a valid agreement to the contrary, it has become a part of the realty which belongs to Compton. The material furnished by the tenant has become so mixed and interwoven with that belonging to Compton that same cannot be withdrawn without material injury to the entire structure. Therefore, neither the tenant nor the lumber company as his mortgagee has a right to remove any part of said building. Eaves v. Estes, 10 Kan. 314, 15 Am.Rep. 345, quoting from Ford v. Cobb, 20 N.Y. 344, 348; 19 Tex.Jur. 735; 29 Tex.Jur. 575; McCallen v. Mogul Producing & Refining Co. (Tex.Civ.App.) 257 S.W. 918, par. 7; Quinn v. Dickinson (Tex.Civ.App.) 146 S.W. 993, par. 10; Watson v. Markham & Reese, 33 Tex.Civ. App. 476, 77 S.W. 660, 661; 41 A.L.R. 616, note 5.

Appellees insist that since the building in question was constructed by the tenant in good faith with material, a part of which belonged to the tenant and a part of which belonged to the trustee in bankruptcy and to Compton, and since the tenant furnished the principal part of the material and all the labor for the construction of the building, under the doctrine of accession he should have full title to the building, subject only to Compton's claim for compensation for the value of the raw material belonging to Compton and used by the tenant in the construction of the building. See, in this connection, 1 C.J.S., Accession, 415, § 4; 1 Am. Jur. 199; 1 R.C.L. 117. This doctrine in the main applies only to personal property. 1 Am.Jur. 198, § 2. But if it be applied in this case, the appellees would lose because, as heretofore pointed out, the building was so constructed as to become a part of the realty, and since ap-

pellant is the owner of the land upon which the building was constructed and of which it is now a component part, he furnished the principal material for the enterprise and under said doctrine he is entitled to retain title to the whole. 1 R. C.L. 117, § 3; Peirce v. Goddard, 22 Pick. (Mass.) 559, 33 Am.Dec. 764. Moreover, since the tenant obtained the right to use the material belonging to Compton upon the understanding that the building would remain a permanent part of the real estate, he and his mortgagee are bound thereby.

That part of the judgment in favor of the plaintiff against Eason for debt is affirmed. In all other respects the judgment of the trial court is reversed, and judgment here rendered in favor of Compton.