FORT WORTH IMPROVEMENT DISTRICT No. 1 v. CITY OF
FORT WORTH.

### No. 2522. Decided June 27, 1913.

#### 1.—Final Judgment.

A judgment is final only when it leaves nothing further to be litigated in the case. (P. 153.)

#### 2.—Same—Injunction—Appeal—Temporary Order.

An injunction granted in an action by a city against an improvement district constructing a levee along the bank of a stream for the protection of riparian lands from overflow, and threatening thereby the destruction of the waterworks plant of the city on the opposite bank by flood waters thrown against it, which temporarily restrained the completion of the work by defendant, and commanded the leveling of part of the embankment already constructed, but this only in the event defendant failed within sixty days to protect such property of the city with adequate dikes, was not a final judgment. Appeal from such order was from a temporary injunction within the meaning of articles 4644, 4645, Rev. Stats., 1911, and governed by the rules applicable to such appeals. (Pp. 153, 154.)

#### 3.—Same—Briefs—Motion for New Trial.

On appeal from an order granting a temporary injunction no motion for new trial is necessary, nor is it required that formal assignments of error or briefs be made by appellant. The statute (Rev. Stats., 1911, art. 4645) contemplates that the same issues shall be submitted to the appellate court as to the trial judge, and in the same way. Merrill v. Savage, 49 Texas Civ. App., 292, approved. Forty-Acre Spring L. S. Co. v. West TexBk. & Tr., Co., 118 S. W., 790, criticised. (Pp. 154, 155.)

#### 4.—Supreme Court—Certified Question.

On questions certified to the Supreme Court, it has no authority to find the facts in the case. It can not determine whether defendant was, by its conduct, estopped upon the issues involved, in the absence of finding of the facts with reference to such estoppel, shown by the certificate. (P. 155.)

#### 5.—Water Course—Riparian Owners—Levees.

The owner of one bank of a stream has no right to erect embankments to protect his land from overflow which will change the natural flow of the waters in time of flood and cast it upon his neighbor's land. (Pp. 155, 156.)

#### 6.—Same—Legislative Authority—Public Improvement—Constitution.

Private property can not be damaged or destroyed for public use without compensation (Const., art. 5, sec. 17). The authority given by statute to an improvement district organized under Chapter 2, Title 83, Rev. Stats., 1911, to erect levees to protect land from overflow must be exercised with due regard to its effect on the lands of others; and the erection of levees by such district may be restrained by injunction where such work threatens destruction to the property of others by throwing against it the flood waters of a stream, since the law makes no provision for compensating such injured party. (Pp. 156-160.)

#### 7.—Same—Property Dedicated to Public Use.

Property dedicated to one public use, such as city waterworks, can not be taken under eminent domain, nor, it seems, can it be damaged or destroyed, even with compensation, for the construction or other works of public use, such as levees of an improvement district for preventing overflow, and such destruction may be prevented by injunction. (P. 160.)

Questions certified from the Court of Civil Appeals for the Second District in an appeal from Tarrant County.

*McLean, Scott, McLean & Bradley,* for appellant.—As only one question is to be decided by the court below, towit: whether or not a temporary writ of injunction should be ordered in the case, the necessity for assignments of error, for briefs and for motions for new trial was done away with by the Legislature. Rev. Stats., arts, 4644, 4645.

It is the duty of the city, under all the circumstances of this case, to build a dike or levee around its waterworks for their protection. We base our contention in this respect upon the fact that the city is estopped now to seek or have said remedies, because it acquiesced in the construction of the levee after full notice of its location and its dimensions, by having sold for a valuable consideration the right of way through the Trinity Park, which the record shows is opposite to the city's waterworks, and is a part of the levee which the order of the court directs shall be razed. We contend that appellee is further estopped from asking or obtaining said remedies, because of the fact that it withdrew its first suit, which was brought at the inception of the enterprise, before the money had been expended and the work done, in order to enable appellant to raise money on its bonds for the purpose of prosecuting to completion said levee project.

Appellant is a body corporate and politic, and the improvement district is a political subdivision of the State, invested with a part of the State's sovereignty. 2 Farnham, Waters and Water Rights, sec. 360.

Any rule which would prevent the construction of a levee because the effect would be to cast more water onto neighboring property would be in the direction of stagnation and the stifling of enterprise. It retards progress and should not be adopted unless its adoption is absolutely necessary. 2 Farnham, Waters and Water Rights, sec. 357.

The various districts having charge of the construction of levees act as the agents of the State, and are not liable, in the absence of constitutional provisions, for injuries caused to private lands, unless made so by the statute. 2 Farnham, Waters and Water Rights, sec. 357, p. 1341; Cubbins v. Mississippi Commission, 204 Fed., 299.

Our Constitution and statutes both provide that private property shall not be taken or damaged without just compensation. In this case there is no taking of the land of appellee, but only remote and consequential injury thereto for which damages may be claimed. The levee being for the public good and being a part of a general system for the reclamation of overflowed lands, provided for both by the Constitution and laws of the State, its construction can not be enjoined; especially can appellant not be compelled to destroy the levee as a nuisance after its construction. Having been constructed in pursuance of the Constitution and laws of the State, and there being no allegation or contention that it has not been constructed in a careful and scientific manner, the existence of the levee can not be complained of as a nuisance. Lamb v. Reclamation District, 73 Cal., 125; 2 Am. St., 775.

*H. C. McCart* and *Geo. W. Steere,* for appellee.—The judgment in the case at bar is not such judgment as is contemplated by articles 4644, 4645, and 4646. Judgment in present case disposes of all parties and issues, after a full hearing on the merits, and is, therefore, final, and appeal therefrom should be in the ordinary manner, as provided by the General Statutes. Linn v. Arambould, 55 Texas, 617; Harris v. Sanders, 45 S. W., 29; Pryor v. Emerson, 22 Texas, 163-164; Railway Co. v. City of Galveston, 137 S. W., 724; Railway Co. v. Railway Co., 61 Mich., 9; 23 Cyc., 672; 1 High on Injunctions (3rd ed.), secs. 3 and 4.

If judgment at bar is such case as contemplated by articles 4644, 4645, and 4646, it was nevertheless necessary for appellant to file a motion for new trial and assignments of error, as said articles only dispense with briefs. Live Stock Co. v. Bank, 118 S. W., 790. Apparently contra, Merrell v. Savage, 109 S. W., 408. Other cases construing said articles are: Hanna v. Garrett, 132 S. W., 952; McKenzie v. Withers, 152 S. W., 660: Dodson v. Berger, 130 S. W., 1020; Bledsoe v. Fraternal Order, 131 S. W., 251; Live Stock Co. v. Parrish, 127 S. W., 255.

The facts stated by the Court of Civil Appeals justify the judgment. Constitution of Texas, art. 1, sec. 17; 15 Cyc., p. 614 (11) and note; Railway Co. v. Railway Co., 92 Texas, 162; Water Co. v. Evans, 166 Ill., 548; Pomeroy's Equity Juris. (3rd ed.), vol. 5, p. 872; Pomeroy's Equity Juris. (3rd ed.), vol. 4, secs. 1350-1351; Pomeroy's Equity Juris. (3rd ed.), vol. 6, p. 652; Beach on Injunctions, vol. 2, secs. 1115-1116; Crawford Co. v. Hathaway, 93 N. W., 781.

It is undoubtedly the general rule that a riparian proprietor has no right to erect a levee along the margin of a stream which will cause the water in its flood to flow upon, or injure the lands of the opposite, or other riparian proprietor. Cairo V. & C. Ry. Co. v. Brevoort, 25 L. R. A., 527; Ferris v. Dudley, 78 Ala., 124; O'Connell v. E. Tenn. V. & G. R. Co., 12 L. R. A., 394; Burke v. Sanitary District, 38 N. E., 670; Keck v. Venghause, 103 N. W., 773; Burwell v. Hobson, 65 Am. Dec., 247; Jefferson v. Hicks, 24 L. R. A. (N. S.), 214; Sullivan v. Dooley, 31 Texas Civ. App., 589.

When in times of ordinary high water a stream extends beyond its banks and flows over the adjacent low lands in a broader but still definable stream, it has still the character of a water course, and the law relating to water courses is applicable rather than that relating to mere surface water. Jefferson v. Hicks, 24 L. R. A. (N. S.), 214; O'Connell v. E. Tenn. V. & G. R. Co., 13 L. R. A., 394.

There is no public policy to allow one land owner to improve his condition at the cost of his neighbor, but the improver must, at his peril, see to it that the benefit to himself is large enough to pay both himself and his neighbor's damage, if any. The law does not look to the interest of one individual, but recognizes and enforces the duties implied in his relation to others. O'Connell v. E. T. V. & G. Ry. Co., 13 L. R. A., 394.

Injunction is the proper remedy in a case of this character. See Rev. Stats., art. 2989, as amended by Act of the 31st Leg., p. 354; Holbein v. De La Garza, 126 S. W., 42; Cairo, etc., Ry. Co. v. Brevoort, 25

L. R. A., 527, 62 Fed., 129; Jefferson v. Hicks, 24 L. R. A. (N. S.), 214; Sullivan v. Dooley, 73 S. W., 82; Railway Co. v. Tate, 63 Texas, 223; Railway Co. v. Seymour, 63 Texas, 345.

As to alternative decree, see Hart v. City of Seattle, 45 Wash., 300; 13 A. & E. An. Cases, 438.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

The certificate of the Court of Civil Appeals of the Second District is as follows:

"The Fort Worth Improvement District No. 1, in pursuance of title 47, Revised Statutes of Texas, 1911, has constructed certain levees which, according to allegations of the complainant, the City of Fort Worth, threaten to destroy certain municipal property and from a judgment of the District Court enjoining it in the maintenance of such levees the improvement district appeals.

"As preliminary to the questions of practice certified the judgment in its entirety is here set out:

" 'This day came the parties by their attorneys and submitted the matter in controversy as well of fact as of law to the court, and the evidence and argument of counsel having been heard, and fully understood, it is considered by the court that the equities of the case are with the plaintiff; and

" 'It is therefore adjudged, decreed and ordered by the court that a temporary writ of injunction issue, restraining and enjoining the defendant, its agents or employees, from filling the gap in the levee now being constructed by the defendant as said gap now exists at the intersection of said levee with North Main Street, in the City of Fort Worth; and

" 'It is further adjudged, decreed and ordered by the court that a mandatory writ of injunction issue, commanding and directing the defendant to take immediate steps to protect the two waterworks plants of plaintiff, towit: The old pumping station and the Holley plant, by adequate dikes or levees within sixty days from the date hereof, but, in the event defendant refuses to take such steps, said defendant is commanded and directed to tear out and remove the following parts of the levee already constructd by it, towit:

" 'Beginning at a point on the levee along the Clear Fork and approximately 300 feet west of the Frisco tracks, and at the extreme southwest end of said levees, the defendant is directed to tear out and remove said levee and dirt work level with the surrounding ground and territory from the aforesaid point in an easterly, northeasterly direction for a distance of 900 feet. And beginning at a point 600 feet upstream from a point in said levee opposite the Holley plant, the defendant is directed and commanded to level said levee and embankment to the ground for a distance of 200 feet upstream from the aforesaid point of beginning.

" 'The clerk of this court is hereby directed to issue a writ of injunction in accordance herewith.

" 'To which action and judgment of the court the defendant then and there in open court excepted and gave notice of appeal to the Court of Civil Appeals for the Second Supreme Judicial District.'

"The improvement district duly filed its appeal bond in proper form on February 5, 1913, and on the same day filed the transcript of the record in this court. The transcript contains neither a motion for new trial below, nor an assignment of errors, nor are any briefs filed by the appellant in this court. The following agreement as to certain facts involved is contained in the statement of facts, towit:

" 'That the City of Fort Worth is a municipal corporation, and is now and was long prior to the creation of the Fort Worth Improvement District No. 1, a riparian owner of certain lands upon and along the Trinity River, and that it has for approximately twenty-five years maintained on such land two pumping stations, towit: One on the Clear Fork near the confluence of that with the West Fork, known as the old pumping station, and one on the Clear Fork approximately one mile from the old station, known as the Holly plant, as indicated by the letters X and Y on map attached to and made a part of plaintiff's petition, and said plants are not within the area or lines of the improvement districts which embraces about 3000 acres. That heretofore the highest floods have not flooded either of said stations but during the flood of 1908 the water came within about eight inches of the door sills of the Holly plant and up to the door sill of the old pumping station and a few inches above, it being necessary to put sacks of sand in the door in order to keep the water out of said plant at said time, but that by reason of the existence of the levee and as a result of the construction of the same, each of said plants will now be submerged approximately five feet in times of ordinary flood, and that as direct and proximate result of such flood the city and its inhabitants by reason of the destruction of machinery that will be damaged and by reason of being unable to supply water for domestic purposes, and for fire protection will suffer irreparable injury.

" 'That the defendant, Fort Worth Improvement District No. 1, has been organized and created in strict conformity and compliance with the terms and conditions of the statute providing for same.

" 'That in pursuance of its purposes it has acquired a right of way, and constructed almost to completion a levee along the banks of said West and Clear Forks of the Trinity River. By the Holly plant the levee is constructed on the west bank opposite to plaintiff's property; that the old pumping station stands on the Clear Fork of the Trinity River near the confluence of that stream and the West Fork and the levee is constructed on the opposite side of the river.

" 'That before the construction of said levee these flood waters, which will now be confined within the levee, spread out over the valley in one continuous stream of water of approximately one mile in width with a depth of approximately two to five feet, and that said waters found their way back into the main channel farther down the stream. That by reason of the construction of said levee the Fort Worth Improvement

District has heretofore levied a tax of $1.75 upon the $100 valuation, as said property is assessed for State and county taxes, said assessment being the limit allowed by law for such purposes. There are from 300 to 500 persons owning property within this levee district.

" 'The cost of building this levee was approximately $250,000, and the length of same is approximately eleven miles.

" 'The height of the levee is from 8 to 20 feet; the base is from 46 to 106 feet; the levee is 6 feet wide on top, this width being uniform.

" 'It is agreed that the levee is constructed at least five feet above the high water mark of 1908.'

"We find the facts embraced within this agreement to be true and further find that the evidence justifies the judgment awarding a temporary writ of injunction if the rules governing the issuance of such writs applicable generally to individuals shall be held to be applicable to drainage districts under the statute like appellant. Supplementing our statement if necessary we beg to refer to a statement of the pleadings contained in the transcript and also to the statement of facts which accompanies it. We beg to certify to your honors for decision:

"First. Whether or not this appeal is from an order granting a 'temporary injunction' within articles 4644 and 4645, Revised Statutes, 1911, authorizing such appeals and dispensing with the necessity for filing briefs in the Court of Civil Appeals, or is the judgment attempted to be appealed from a final judgment in the cause and the appeal, therefore, governed by the general rule with respect to filing briefs?

"Second. If the appeal is authorized under the articles of the statute last above referred to, then may the same be heard in this court in the absence of a motion for new trial (under Rule 71a for the guidance of District and County Courts) and in the absence of assignments of error?

"Third. Do the facts stated justify the judgment of the District Court, the other questions presented being answered in a way to make this material?"

In answer to the first question it is our opinion that the judgment is not a final one, and the appeal in the case may be properly characterized as from an order granting a temporary injunction, within the provisions of article 4644, Revised Statutes of 1911. A judgment is final only when it leaves nothing to be further litigated in the case. Linn v. Arambould, 55 Texas, 611; Texas & P. Ry. Co. v. Ft. Worth St. Ry. Co., 75 Texas, 82. While this judgment in its provision for the mandatory injunction grants such relief as would not ordinarily be extended except as the result of a trial upon the merits and in this feature has the aspect of finality, yet in respect to "filling the gap in the levee now being constructed by the defendant as said gap now exists at the intersection of said levee with North Main Street in the City of Fort Worth," which was apparently essential to the completion of the levee, it decrees only a temporary injunction. It thus appears that a necessarily important issue in the case, that is whether this work might ultimately be done by the defendant toward the completion of the levee, is not finally

disposed of. By the mandatory injunction provided for, the defendant is commanded to protect the waterworks plant of the plaintiff by the erection of adequate dikes or levees within sixty days from the date of the order, otherwise it is directed to remove certain parts of the levee as constructed. But the judgment is not open to the construction that the defendant should be permanently enjoined from this work of completion in the event it performed that part of the mandatory injunction requiring that it protect the plaintiff's waterworks plant by adequate dikes or levees. It is apparently framed upon the view that the defendant would have the right to complete the levee if it adequately protected the waterworks plant. The obvious purpose of the judge was not to conclude this question since the judgment makes no disposition of the rights of the parties under such alternative. In only temporarily enjoining the work of completion the ultimate right of the defendant to finish and maintain the levee is by the terms of the judgment plainly left for future adjudication. In the absence of an absolute determination of this issue the judgment is not a final one.

In reply to the second question we answer that in a proceeding of this character the filing of a motion for a new trial was unnecessary, and the appeal was entitled to be heard without the presentation of formal assignments of error. The statute imposes no such requirement in terms, and it is excluded, we think, by necessary implication. The provision in article 4645 that "the case may be heard in said court on the bill and answer and such affidavits and evidence as may have been admitted by the judge granting, refusing or dissolving such injunction" very plainly implies that the filing and determination of a motion for a new trial was not a necessary prerequisite to the appeal. It contemplates that the same issues shall be presented to the appellate court as to the trial judge, and in the same way, as is evident from this provision. A motion for a new trial could perform no useful office in such a proceeding. If it had been contemplated, the statute would not have required, as it does, that the time for the filing of the transcript be computed from the date of the entry of record of the *order* or judgment granting, refusing or dissolving the injunction, which clearly has reference to the original order or judgment of the judge in the matter. A further provision in article 4645 is that the appellant "may file a brief in the Court of Civil Appeals or Supreme Court," plainly showing that the filing of briefs is not positively required. Since briefs are not required, the provision that the case may be heard in the appellate courts upon the "bill and answer," etc., clearly has the force of dispensing with the filing of assignments of error. The purpose of the statute was to facilitate the prompt hearing of such appeals, and it is manifest from its provisions that it was the intention of the Legislature to relieve the proceeding from these formalities. This view of the statute in respect to the filing of assignments of error was correctly taken by the Honorable Court of Civil Appeals for the Second District in Merrill v. Savage, 49 Texas Civ. App., 292, 109 S. W., 408. The opposite view was announced by the Honorable Court of Civil Appeals

for the Third District in Forty-Acre Spring Live Ctock Co. v. West Texas Bank & Trust Co., 118 S. W., 790. A writ of error was denied in the latter case, but it does not appear to have been refused upon this ground. At all events we are convinced that our construction of the statute is that which its terms require and its purpose enjoins.

Under the third question the contention made in this court by the appellant, the defendant below, is largely predicated upon the position that the City of Fort Worth was estopped to interfere with its completion and maintenance of the levee. Whatever may be the facts as shown elsewhere in the record the certificate of the Court of Civil Appeals embodies no findings of fact which present the issue of estoppel. We have no authority to find the facts in any case, and in this proceeding are not privileged to ascertain them beyond such finding thereon by the Court of Civil Appeals as is presented in its certificate. Our answer to this question is, therefore, without regard to such issue.

As between individual riparian owners it is an established principle that one may make no use of the stream that will result to the injury of the other, and may for his greater convenience or benefit erect no embankment or obstruction which in times of ordinary flood will cause its waters to overflow and injure the lands of an opposite proprietor. This is but the application of the doctrine embodied in the ancient maxim, that one must enjoy his own rights so as not to injure those of another, or as elsewhere well expressed, "the necessities of one man's business can not be made the standard of another man's rights in that which belongs equally to both," which of course includes that in which both have an equal usufructuary interest, the extent of the right of riparian owners in the waters of a stream. It is but the rule of universal right and common justice and stands in need of no sanction to give it authoritative force. The question, however, is thoroughly treated in Farnham on Waters and Water Rights, vol. 2, sec. 530, in which it is said: "The owner of one bank may erect structures to protect his bank in its original condition. But he can not erect embankments in the stream for the purpose of reclaiming land, the effect of which is to destroy the opposite bank. Nor can he erect structures for the protection of his own banks in such a way as to change the natural flow of the water and cast it upon his neighbor's land. It has been held that one owner might raise his bank so as to confine the water to the channel in times of flood. But in such cases the limitation is made that in so doing he must not cause injury to the lands or property of other persons. The limitation goes a long distance towards destroying the rule. A basin of a given size is necessary to hold the water which naturally belongs to a water course, and if it is cut off on one side it must be enlarged on the other; so that the raising of one of the banks, preventing the water from occupying the flood channel on that side necessitates its occupying proportionately more space on the opposite side, and the increase of the water there must, of necessity, cause injury to the land owner; and the act is a direct violation of the maxim *sic utere tuo ut alienum non laedas,* in that, for the purpose of relieving his own

property of a burden, the owner merely transfers it to his neighbor. Some of the cases have made the question of liability depend upon whether or not the current of the stream was changed by raising the banks on one side, holding that.there was liability in case it was. But the broader rule that the owner of one ·bank can not turn the water onto his opposite neighbor is very ancient. Vattel states that no embankment can be raised the tendency of which is to throw the water upon the opposite bank. And that is the rule which has been adhered. to, more or less strictly, by the current of authority. It is also the rule of justice and right. If, for the protection of property and the development of the country, it is necessary to confine the waters to the channel of the stream, it can easily be done under the governmental power to make needed improvements, by raising banks on both sides of the stream alike; and one owner should not be permitted to take the matter into his own hands, and thereby injure or destroy the property of his neighbor. This rule prevents the construction of a solid embankment along the stream by a railroad company the effect of which is to cast the water in greater quantities onto the opposite shore."

A thorough review of the cases is found in the decision of the Supreme Court of Georgia in the case of O'Connell v. Railroad Company, ·13 L. R. A., 394, in which the general rule is reannounced. In Angell on Water Courses, section 528, it is said: "But a riparian proprietor for his greater convenience and benefit has no right to build anything which, in times of ordinary flood, will throw water on the grounds of another proprietor so as to overflow and injure them." Other authorities upon the question are Sullivan v. Dooley, 73 S. W., 82; Keck v. Venghause (Ia.), 103 N. W., 773; Casebeer v. Mowry, 55 Pa. St., 419; Farris v. .Dudley, 78 Ala., 124.

The.question involved here is whether this principle governs in relation to a work of public improvement prosecuted under legislative authority. The reclamation of lands bordering upon streams accustomed to overflow is a work of great public importance, to be encouraged and promoted, and its progress and development are of common concern. These considerations of public interest had weight with the Legislature and led to its enactment, in 1909, of the law providing for its prosecution by improvement districts, now constituting chapter 2 of title 83, Revised Statutes of 1911, under which, as we understand the case, the appellant was created and the levee in question has been in part completed. The work is therefore one which is clearly licensed and authorized by law, and to the time of the issuance of the injunction had involved the expenditure of a large sum of money. It appears, however, from the certificate that the result of its completion will be in times of ordinary flood to cast the waters of the river, along one bank of which it is constructed, upon the land of the appellee on the opposite bank in such quantity and degree as to practically work the destruction of an expensive waterworks plant, upon which the citizens of Fort Worth are dependent for a water supply for domestic purposes and fire protection, inflicting in consequence irreparable injury.

We are not insensible of the importance of the question, or the bearing of its decision, however it is determined, upon the respective parties. It is of a character to constrain a court to diligent care, but to our minds it is resolved by principles of law that are unassailable, whose application can only lead to one conclusion.

Section 17 of article 5 of our Constitution is as follows:

"No person's property shall be taken, damaged or destroyed, for, or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof."

In Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Texas, 467, Judge Stayton discussed this provision as follows:

"This language is broader than that used in the former Constitutions of this State, and was doubtless intended to meet all cases in which, even in the proper prosecution of a public work or purpose, the right or property of any person, in a pecuniary way, may be injuriously affected by reason of the thing being made thereby less valuable, or its use by the owner restricted by the public use to which it is wholly or partially applied, without compensation having been first made to the owner.

"It is also not improbable that it was intended, by the language found in the present Constitution, to meet and correct evils which had sometimes been thought to result to the property owner from a narrow and technical meaning sometimes put by courts upon the word 'taken' used in the former Constitutions of this State and in the Constitutions of the most of the other States.

"The word 'property,' as used in the section of the Constitution referred to, is doubtless used in its legal sense, and means not only the thing owned, but also every right which accompanies ownership and is its incident."

In the construction of legally authorized public works it is inevitable that benefits will accrue to the property of some persons and injury result to that of others. If the injury that thus results from the improvement be only of such nature as is suffered from that cause in common with other property in the same community or section the damages thus accruing are deemed merely consequential and no right of action exists. In such cases it is not considered that the property is "damaged" within the contemplation of the constitutional provision, and the right to compensation is denied. If, however, a public work is constructed which inflicts an injury peculiar to certain property not suffered in common with other property in the community or section, then such property is "damaged" within the meaning of the Constitution, and the law will not permit the infliction of such injury without the allowance of just compensation. Whenever the Legislature, therefore, authorizes the construction of a public work there is imposed upon

its authorization the constitutional limitation, that no man's property may be "damaged" thereby unless just compensation be allowed, and unless provision be made therefor as to property so "damaged" the legislative permission affords no authority for the particular act. Railway Co. v. Fuller, supra.

The question in all such cases is resolved by determining whether the injury is peculiar to the property in question or is only such as is suffered from the same cause in common with other property in the same section or community, that is, whether the property is "damaged" in the true sense of the constitutional provision. Whenever the injury amounts to a direct invasion of the given property, so as to destroy it for its accustomed use, accomplishing in effect an actual appropriation, as, according to the certificate, would be the effect upon the appellee's property under the condition of an ordinary flood in the bordering stream, there can be no doubt that the damage is not merely consequential in its nature but is of the character for which, in cases of private property, compensation would have to be made if the act causing the injury were permitted. A profitable discussion of this question is found in the opinion of Justice Miller in the case of Pumpelly v. Green Bay Company, 13 Wall., 166, where the plaintiff's lands were overflowed as the result of the construction of a dam and legislative authority for its construction was interposed as a defense to an action for damages, in the course of which it was said:

"The argument of the defendant is that there is no *taking* of the land within the meaning of the constitutional provision, and that the damage is a consequential result of such use of a navigable stream as the government had a right to for the improvement of its navigation.

"It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the government, and which has received the commendation of jurists, statesmen, and commentators as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that, if the government refrains from the absolute conversion of real property to the uses of the public, it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowed sense of that word, it is not *taken* for the public use. Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors.

"In the case of Gardner v. Newburgh, 2 Johnson's Chancery, 102, Chancellor Kent granted an injunction to prevent the trustees of Newburg from diverting the water of a certain stream flowing over plaintiff's land from its usual course, because the Act of the Legislature which

authorized it had made no provision for compensating the plaintiff for the injury thus done to his land. And he did this though there was no provision in the Constitution of New York such as we have mentioned, and though he recognized that the water was taken for a public use. After citing several continental jurists on this right of eminent domain, he says that while they admit that private property may be taken for public uses when public necessity or utility requires, they all lay it down as a clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified. And he adds that the principles and practice of the English Government are equally explicit on this point. It will be seen in this case that it was the diversion of the water from the plaintiff's land, which was considered as taking private property for public use, but which, under the argument of the defendants' counsel, would, like overflowing the land, be called only a consequential injury.

"If these be correct statements of the limitations. upon the exercise of the right of eminent domain, as the doctrine was understood before it had the benefit of constitutional sanction, by the construction now sought to be placed upon the Constitution it would become an instrument of oppression rather than protection to individual rights."

In Bradburg v. Vandalia Levee and Drainage District, 236 Ill., 36, 86 N. E., 163; 19 L. R. A. (N. S.), 991, the same defense was interposed by such a district as the appellant here in an action for damages to overflowed lands caused by the erection of a levee under the authority of a legislative Act similar to that here involved, but the Supreme Court of Illinois held:

"It is correct to say that a drainage district is a quasi corporation if the act under which it is organized does not make it a corporation in fact; but it is not created for political purposes or for the administration of civil government. Undoubtedly a drainage district is not liable for the unauthorized acts of its commissioners for which they are personally liable; but the district is clothed with the power of eminent domain for the purposes of its organization and is prohibited by the Constitution from taking or damaging lands without making compensation therefor. If no means were furnished with which to pay such damages, that fact would furnish no authority for causing such damage, and the obvious result would be that acts causing damage to others could not be performed at all."

To the same general effect is the holding in Weaver v. Mississippi, etc., Co., 11 N. W. (Minn.), 114, and Ex parte Martin, 58 Am. Dec. (Ark.), 321. Upon the same question in Farnham on Waters and Water Rights, vol. 2, sec. 357, it is said:

"In States where the Constitution provides for the payment of damages for land injured as well as taken, the liability of the land to such injury may form an element of the damages to be awarded to the land owner. And, if no provision whatever is made for damages for the land taken, the construction of a levee which will obstruct the drainage of lands will be enjoined."

The Act under which this levee has been constructed, while clothing the districts thereunder authorized with the power of eminent domain, makes no provision for the payment of compensation for lands damaged. On the contrary it is therein provided by article 5569 that "no county or improvement district, nor the taxpayers therein, shall be held for damages occasioned by the construction, maintenance or repair of levees or other improvements under the provisions of this chapter."

Since no compensation is provided or offered for the injury to which, according to the certificate, the appellee's property would be subjected by the completion of the levee, it is clear that for this reason alone an injunction would lie though the injury will be inflicted by an act in the interest of a public use. The case, however, presents another reason which in our opinion plainly justified resort to this remedy. The act enjoined would have affected property itself dedicated to a public use. In respect to such property even the power of eminent domain may not be exercised if the result will be practically the destruction of the use to which it has been devoted, as the Honorable Court of Civil Appeals substantially finds will be the condition here produced in times of ordinary flood in the river by the completion of the levee. Sabine & East Texas Ry. Co. v. Gulf & Interstate Ry. Co., 92 Texas, 162.

The facts certified are not sufficient for us to say whether the injunction in its entire scope and extent was justified, but in answer to the third question our holding is that under the facts stated in the certificate the appellee was entitled to an injunction restraining the completion of the levee until adequate protection is afforded to its property, with such provision as will relieve its property from the threatened injury if such protection be not given.