## HARRIS COUNTY DRAINAGE DIST. No. 12 v. CITY OF HOUSTON et al.

### No. 1100—5344.

Commission of Appeals of Texas, Section B.
Feb. 4, 1931.

A. E. Amerman, of Houston, for plaintiff in error.

Sam Neathery, City Atty., Sewall Myer, J. H. Painter, and John H. Freeman, all of Houston, for defendants in error.

RYAN, J.

On December 29, 1922, Harris county drainage district No. 12, together with bonds for its improvement, were voted by the residents thereof; said bonds were sold, and the proceeds used in making such improvements which included the dredging, straightening, and deepening of Bray's bayou and Harris bayou or gully, under the direction of the drainage commissioners of said district and in accordance with the law governing such district. All of the improvements were made by the district, both outside of as well as in the territory newly taken into the city limits.

Exactly one day after the district was created and the bonds voted, to wit, on December 30, 1922, the city of Houston extended its limits and took into its boundaries additional territory, some of which is without, and some within, the district's boundaries, the latter including a part of Bray's bayou and territory around Harris gully.

In 1927 the city of Houston determined to inaugurate a comprehensive drainage plan and system of storm sewers for that section of territory, and contract accordingly was let by the city to Nichols & Martin, a corporation, which contract, signed on February 8, 1928, contemplates the deepening and widening of Harris bayou.

It is the city's contention that, although the drainage district had originally constructed certain drainage ditches and canals, the city may now take possession of and deepen and widen them as above stated, without consulting and regardless of the drainage district's commissioners, on the theory that the district is subservient to the city, so far as, when, and to the extent, any of its territory is included within the city limits, and that therefore the city is not required to obtain permission of or arrange terms with the district's authorities before artificially draining the city's storm waters into the ditches and canals of the drainage district existent within the city's corporate limits, and regardless of whether such ditches and canals were con-

structed by the district before or after annexation to the city.

On February 15, 1928, plaintiff in error, drainage district, filed its petition in the district court of Harris county against the city of Houston, its mayor, city commissioners and Nichols & Martin, to restrain them from trespassing upon the property alleged to be that of the district, and from undertaking to dig or dredge in the ditches or canals of the district, and from making any artificial drains into the same, without first complying with the statute governing such drainage districts, obtaining the consent of the district as provided by such statute, and paying a proportionate part of the cost.

The trial court found that the drainage district was duly and legally created, that the city had not complied with articles 8167, 8168, 8169, or 8153 of the Revised Statutes governing drainage districts, but held that the same are not applicable to cities of over 5,000 inhabitants, such as the city of Houston, under the home rule amendment to the Constitution and the enabling act thereunder. The court further held that said enabling act in effect repealed said articles in so far as home rule cities are concerned, and therefore said city has the legal right to drain its storm waters into Harris bayou without permission from and regardless of the drainage district, or its governing authorities.

Judgment was for the defendant city, which was affirmed by the Court of Civil Appeals. 17 S.W.(2d) 833.

### Opinion.

Warrant for the creation and government of drainage districts such as the one here involved, as well as of municipal corporations such as the city of Houston, is found in separate provisions of our state Constitution and separate statutory enactments thereunder, one class applicable to drainage districts and another to cities of more than 5,000 inhabitants.

At the general election in November, 1904, section 52, art. 3, of the Constitution, was amended to permit any defined district within the state, and which may or may not include towns, villages, or municipal corporations, upon a vote of a two-thirds majority of the resident property taxpaying electors of such district, to issue bonds, in addition to all other debts, in any amount not to exceed one-fourth of the assessed valuation of the real property of the district, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other constitutional provisions; such districts are given the authority to levy and collect such taxes to pay the interest on such bonds and provide a sinking fund for the redemption thereof, as the Legislature may authorize, for, among other purposes, "the construc-

tion and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof."

By act of March 23, 1907 (Acts 30th Leg., chap. 40), the Legislature authorized the commissioners' court of the several counties of this state to establish drainage districts in their respective counties, which act was amended in various particulars from time to time, and as so amended is incorporated in title 47, chapter 4 (embracing articles 2567 to 2625), Vernon's Complete Texas Statutes of 1920, which contains the statutory law in force when this drainage district was created in 1922, except the amendment of March 24, 1921 (Acts 37th Leg. c. 83, § 1, amending article 2601), relating to the giving of a bond by the county judge conditioned upon the faithful discharge of his duties with reference to the drainage bonds issued by the district, which amendment, however, has no pertinency to the matters involved in this litigation.

At a special election on August 21, 1917, article 16 of the Constitution was amended by adding thereto section 59 (known as the conservation amendment), which, among other things, declares the reclamation and drainage of overflowed lands and other lands needing drainage to be public rights and duties, and directs the Legislature to pass such laws as may be appropriate thereto; said amendment also authorized the creation of such number of conservation and reclamation districts "as may be determined to be essential to the accomplishment of the purposes" thereof, "which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

It was contended in Dallas County Levee District No. 2 v. Looney, Attorney General, 109 Tex. 326, 207 S. W. 310, that the adoption of said conservation amendment to the Constitution had the effect to supersede subdivisions (a) and (b) of section 52, article 3, but the Supreme Court, in an opinion by Chief Justice Phillips, denied this contention, and held that the purpose of the conservation amendment was to authorize the creation of certain of the districts dealt with by section 52 of article 3, freed from the limitation upon their taxing power imposed by that section, and not to interfere with the organization of such districts as might desire to rest under that limitation; it was not to prevent the creation of districts of the limited authority elsewhere conferred in the Constitution, but simply to provide for the formation of districts of the ampler authority given by the amendment, and there is, accordingly, no inconsistency between it and section 52 of arti-

cle 3, and the latter was not repealed by the former.

With some changes in verbiage and arrangement in numbering of the different articles, title 47, chapter 4, embracing articles 2567 to 2625 of Vernon's Complete Texas Statutes of 1920, is carried into the Revised Civil Statutes of 1925 as chapter 7 of title 128, articles 8097 to 8176.

Under the statute, three drainage commissioners are provided for, who, among other duties prescribed, shall keep the canals, drains, ditches, levees, and other improvements in repair, and have general supervision and control over the construction and maintenance of the same.

Thus we see that under the Constitution authority is given to the Legislature to provide for the creation of such drainage districts as the one in question here, and, when created, they stand upon the same footing within their proper spheres, as county, precinct, or other such political and established subdivisions of the state (Wharton County Drainage Dist. v. Higbee [Tex. Civ. App.] 149 S. W. 381), and are public corporations (Parker v. Harris County Drainage District [Tex. Civ. App.] 148 S. W. 351, 360; Ogburn v. Barstow Drainage Dist. [Tex. Civ. App.] 230 S. W. 1036; Holt v. State [Tex. Civ. App.] 176 S. W. 743). Courts are required to take judicial notice of their establishment; they sue and are sued in their corporate names (Rev. Stat. 1925, art. 8174), and only the state, upon motion by the Attorney General, can contest their validity (Id. art. 8175).

The city of Houston likewise is a public corporation—a political and established subdivision of the state. Rev. Stat. 1925, art. 1319; Blessing v. City of Galveston, 42 Tex. 657; 1 Beach, Pub. Corp. § 2; 1 McQuillan, Mun. Corp. § 106; 1 Abbott, Mun. Corp. § 6. It is governed, so far as charter authority is concerned, by section 5, art. 11, of the Constitution, adopted at an election held on November 5, 1912, which permits that class of cities to adopt or amend their charters by a majority vote of their qualified voters, subject, however, to such limitations as may be prescribed by the Legislature, and provided that no charter or ordinance thereunder shall contain any provision inconsistent with the Constitution or of the general laws enacted by the Legislature.

For the purpose of carrying this constitutional provision into effect (as stated in section 10 of the original act), and providing the necessary machinery therefor, the Legislature passed as a general law the so-called enabling act approved April 7, 1913 (Gen. Laws, 33d Leg., c. 147), and, with the additional provision concerning zoning and the establishment of building heights and building lines within such zones, enacted as an addition to such enabling act by chapter 87, Gen. Acts 37th Leg. (1921), is carried into the Revised Statutes of 1925 as article 1165 et seq.

This enabling act enumerates certain powers that may be exercised by such cities, if adopted by vote of the people, and also provides that such "enumeration of powers hereinabove made shall never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government, provided, that such powers shall not be inhibited by the Constitution of the State." Section 5.

Assuming that the city of Houston has, at an election held for that purpose, adopted the provisions of section 15 of article 1175, Rev. Stat. 1925, authorizing it to acquire property within or without its city limits, for drains and watersheds, this authority is, at all times, subject to any and all limitations that may be prescribed by the Legislature, and must not be inconsistent with the Constitution or general laws of the state. Hunt v. Atkinson, County Judge (Tex. Com. App.) 18 S.W.(2d) 594.

Municipal corporations, such as Houston, are of one class and districts such as Harris county drainage district No. 12 are of another class; where two statutes may cover the same subject, the one general and the other special, the special statute will control, upon the broad rule that all statutes must stand, if possible, the special one being treated as though it were a proviso excepting something from the general rule. Hunt v. Atkinson (Tex. Com. App.) 12 S.W.(2d) 142, 145; City of San Antonio v. Toepperwein, 104 Tex. 43, 133 S. W. 416. Thus, here the general statute broadly covering all cities of more than 5,000 inhabitants permits, among many other municipal functions, the drainage of territory within their limits, but this general statute does not render nugatory the other statute applying specially to drainage districts when it has been invoked and the district created, especially when this occurs before any part of such district has been absorbed into the city's boundaries (1 McQuillan, Mun. Corp., § 138), and in view of the constitutional provision that such districts may include municipal corporations (1 McQuillan, Mun. Corp. § 264; 28 Cyc. 147, 148).

As said in City of Fort Worth v. Zane-Cetti (Tex. Com. App.) 278 S. W. 183, 184, "the territory of a city and the territory of a district may be exactly coincident, and for the distinctive purposes separate governments may be provided to operate separately, but harmoniously, within the common orbit," and "the controversy here involves the authority of Fort Worth primarily as a 'school district' whose warrant of existence is to be found in section 3 of article 7 [of the Constitution]. The government of the 'district' given to the city of Fort Worth finds authority solely in

section 10 of article 11. Section 10 of the one article does not purport any change in section 3 of the other; hence, * * * the latter must be read as a definite limitation on what may validly find repose in the charter, or charter amendments, made pursuant to the present section 5 of article 11."

In Simmons v. Lightfoot, Attorney General, 105 Tex. 212, 146 S. W. 871, 872, it was contended by the relator that a road district formed subsequent to a drainage district may embrace a part or all of such drainage district, and, as thus formed, it constitutes a separate unit or entity. This involved a construction of section 52 of article 3 of the Constitution, and Associate Justice Dibrell, speaking for the Supreme Court, upheld relator's contention. To quote from the opinion:

"One district may embrace a part or the whole of another, * * * and, being for a different purpose, is a distinct unit or entity, with power to exercise the functions of its creation. * * * We see this illustrated on every hand and wherever we turn. An independent school district may embrace a city or town with the same boundaries, but for purposes different from the city or town, and with different administrative officers, * * * and as a separate and distinct unit move in the same orbit with the city or town. The county government, with its extended limits, embraces the city government with its more contracted bounds; and the two entities, distinct and separate, move, one within the other, without impairment to either."

We conclude that the enabling act is not inconsistent with, and did not repeal, any part of the acts relating to drainage districts, as was erroneously held by the Court of Civil Appeals and the district court.

■ The city's further contention that it was not intended to give a drainage district any right or power within the city limits, unless with consent of the city's lawful authorities, and, such consent not having been shown herein, the district is powerless in the premises, is met by the fact that the district was created before any portion of it was incorporated into the city limits, and by the further fact that the city did not object, but permitted the drainage district to spend its bond money, make the improvements in question, and function to the fullest extent over so much of its territory as was taken in by the city; the city, therefore, should not now be heard to complain. Its counsel seem to frankly concede the correctness of the latter proposition above stated; in their brief they say:

"It is true that when the Appellant voted upon the question of the formation of its drainage district, none of its territory was a part of this Appellee city, but it is equally true that before any construction work was done, that portion of Appellant's district known as Harris Gully had become a part of the City of Houston, and that at the time this suit was instituted by Appellant, that portion of Appellant's district known as Brays Bayou had also become a portion of the City of Houston. This, appellee states, in all fairness, that while under the law under which Appellant was organized, this Appellee could have, when appellant first started to enlarge, widen and straighten Harris Gully and drain a portion of its district thereinto, stopped Appellant from using said gully, but that not having done so at that time, it would be estopped at this time from preventing the use thereof by the Appellant. This Appellee, however, feels that in such instance it would have the right, even at this time, if Appellant sought to drain more than the natural drainage into said Harris Gully, thereby overloading it and depriving this Appellee of the use thereof, to stop such contemplated action on the part of Appellant.

"Appellee contends that the legislature did not intend to give and did not give to a drainage district such as Appellant herein, any right, power or privilege within the corporate limits of a home rule city, such as Appellee, superior to that of the city authorities, and that where there is a conflict, that the drainage district must yield to the city."

Whether such contention "that where there is a conflict, the drainage district must yield to the city," is correct or not—and we do not pass on that—is beside the question, as we have shown there is no conflict, if each acts "within its own orbit," under its own laws, and performs its own functions thereunder.

The city further contends that the word "corporation" does not include "municipal corporations," and therefore, because article 8167, Rev. Stat., 1925, provides expressly that no corporation shall have the right to artificially drain adjacent lands outside of an established district into the canals, drains, or ditches of such established district, without first obtaining permission of the district commissioners to make such connections, the use of the word "corporation" and not "municipal corporation" precludes the idea that the latter should first obtain such permission.

While it may be true that "corporation" does not include "municipal corporation" (Ritz v. Austin, 1 Tex. Civ. App. 455, 20 S. W. 1029; Fleming v. Texas Loan Agency, 87 Tex. 238, 27 S. W. 126, 26 L. R. A. 250; Searight v. Austin [Tex. Civ. App.] 42 S. W. 857; Elliott v. Brownwood, 106 Tex. 292, 166 S. W. 1129; Id. [Tex. Civ. App.] 166 S. W. 932; City of Dallas v. Halford [Tex. Civ. App.] 210 S. W. 723; City of Tyler v. Tex. Emp. Ass'n [Tex. Com. App.] 288 S. W. 409, 410, and on rehearing [Tex. Com. App.] 294 S. W. 195), it is equally true that one corporation, whether municipal or otherwise, cannot take, damage,

or destroy the property of another, or apply the same to public use, except through due process of law and making adequate compensation; this is a constitutional requirement, and stands above any statutory provision, even if the latter should purport to have the effect given it by the city, which, however, is not the case, as is demonstrated when it is properly considered. Article 8167 appertains only to adjacent lands located outside of established drainage districts, and article 8153 to lands within the district. In the latter case it is provided that the owner must make the drains at his own expense; in the former, that he must pay into the county treasury for the benefit of the construction and maintenance fund of the district a ratable sum in such a proportion as the water to be drained by such outsider bears to that then tributary to and being carried by the original canal or drain, as estimated by the district engineer, unless the commissioners otherwise agree with the applicants.

Counsel for the drainage district insist that Trevino v. San Antonio (Tex. Civ. App.) 269 S. W. 1067, 1068, is authority for the contention that, since the act of 1921 (37th Leg., chap. 109), amending the statute concerning injuries resulting in death, the term "corporations" includes "municipal corporations," and therefore the latter are included in the provisions of article 8167. The act of 1921 applies only to cases of injuries resulting in death, and solely because by the express provisions thereof "the term corporation as used in this Act shall include all municipal corporations, as well as all private and public and quasi public corporations; except counties, and common and independent school districts." No attack was made on that definition in that case, but it was contended that the act was invalid in that respect because its caption is not broad enough to include that portion of the body of the act. The court held otherwise, and therefore, in that class of cases only, the word "corporation" now includes "municipal corporations," but only by virtue of the special definition given it by the act. The Legislature recognized the rule stated in City of Dallas v. Halford (Tex. Civ. App.) 210 S. W. 725, and modified it only to the extent of the class covered by the act of 1921, but no other, and, of course, not as to the class included in the drainage district laws. The Trevino Case therefore is not pertinent to this.

The Court of Civil Appeals further holds that, if the city's contentions are not sustained, it would be powerless to extend its streets over or beyond Bray's bayou or Harris gully, and to place bridges over the same, also that the city's drainage system could be paralyzed and it be prevented from promoting such improvements within its limits as are necessary for the protection of the properties, health, and general welfare of its citizens.

This proposition is answered adversely to the Court of Civil Appeals by the Supreme Court in Fort Worth Improvement District v. City of Fort Worth, 106 Tex. 148, 158 S. W. 164, 170, 48 L. R. A. (N. S.) 994.

In that case, the city of Fort Worth owned and operated a water plant consisting of two pumping stations on the Clear fork of the Trinity river, which would be flooded if the district, afterwards created, were permitted to construct, as it proposed to do, certain levees along the banks of said river. The city sought injunction, and Mr. Justice Phillips, speaking for the court, said that it is an established principle of law that one riparian owner may make no use of any stream resulting in injury to another, or do anything which would overflow or injure the lands of an opposite proprietor, and this rule applies to works of public improvement prosecuted under legislative authority. There the improvement district proposed to do what the city of Houston is threatening to do here. No compensation was proposed to be made by the district to the city, just as here none is proposed to be made by the city of Houston to the drainage district. On this point Judge Phillips wrote:

"Since no compensation is provided or offered for the injury to which * * * the appellee's property would be subjected by the completion of the levee, it is clear that for this reason alone an injunction would lie though the injury will be inflicted by an act in the interest of a public use."

While it is true that the city may not interfere with the legal exercise of the district's powers in so far as its domain and property are concerned, the district likewise has no right to interfere with the city in the making of improvements necessary for the protection of property, health, and general welfare of its citizens as allowed by its charter, so far as they do not conflict with the district—each being supreme within its own sphere. The city may even exercise the right of eminent domain in any proper case, under the rule that, while property already dedicated to the public use may not be condemned for another public use which would destroy the use to which it had been devoted, it may be so condemned, if the necessity be so great as to make the new enterprise of paramount importance to the public and can be practically accomplished in no other way. Sabine & E. T. Ry. Co. v. G. & I. Ry. Co., 92 Tex. 162, 46 S. W. 784; Ft. W. Imp. Dist. v. Fort Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994; 2 Lewis, Eminent Domain, § 400.

The city's counsel frankly concede some rights in the district, as shown by the following excerpt from their brief:

"The Appellee does not believe that a court of equity would permit this appellee as a municipal corporation to so overload said drainage ditches and canals as to preclude the use thereof by the Appellant here, nor does it believe that it will permit the Appellant to do the same thing, but would require each party thereto to widen, deepen, straighten or enlarge such ditches and canals and preserve the rights of the other party so that each would be protected therein."

The injunction prayed for by the drainage district should have been granted, but under such reasonable restraints and conditions as will properly protect and safeguard the respective rights and powers of both the city and the drainage district and their relations to each other, as well as the public interests.

We therefore recommend that the judgments of the Court of Civil Appeals and district court be reversed, and this cause remanded to the trial court for such proceedings as are proper in accordance with the above.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.