**STATE of Texas, Appellant,**

v.

**Thomas T. ALLEN and Wife, Kathy Allen, et al., Appellees.**

**No. 3–92–114–CV.**

Court of Appeals of Texas, Austin.

May 5, 1993.

Rehearing Overruled June 30, 1993.

Dan Morales, Atty. Gen., Kirk Kuykendall, Asst. Atty. Gen., Highway Div., Austin, for appellant.

Kent A. Sick, Womack & McClish, P.C., Austin, for appellees.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

POWERS, Justice.

In a statutory condemnation action, the State of Texas recovered title to a narrow strip across a tract of land owned by Thomas T. Allen and others. Based on the jury's verdict and a stipulation of the parties, the trial court awarded the owners $133,984 in compensation. The sum represents the amount of money necessary to compensate the owners for damage to the remainder of their property, as found by the jury, plus the amount stipulated by the parties as the reasonable market value of the strip taken by the State. *See* Tex.Prop.Code Ann. § 21.042(b), (c) (West 1984). The State appeals. We will affirm the trial-court judgment.

## THE CONTROVERSY

The owners' land abuts the right-of-way line of U.S. Highway 183 in Austin and is situated in an area devoted to commercial uses. Before these proceedings, motor vehicles might be driven directly between the owners' land and the traffic lanes of Highway 183. The City intends, however, to convert Highway 183 to a controlled-access highway. To eliminate grade crossings, the conversion will include raising the main traffic lanes about 37 feet. These elevated lanes will connect at intervals to ramps. The ramps will connect in turn to parallel frontage roads on either side and by them to the general system of public streets in Austin and the vicinity. The owners' land and the narrow strip taken are thus situated much like those in *State v. Munday Enterprises*, 824 S.W.2d 643 (Tex.App.—Austin 1992, writ requested), and *State v. Schmidt*, 805 S.W.2d 25 (Tex.App.—Austin 1991, writ granted). As indicated below,

the State's appeal raises issues of law decided in those earlier decisions.

The State brings seven points of error. The first three complain of the trial-court rulings on certain of the State's pretrial motions; the last four complain of trial-court rulings regarding the court's charge to the jury and the admission of certain evidence.

## PRETRIAL MOTIONS

Both the State and the owners objected to the commissioners' award in October 1989. There was no activity in the case, so far as our record indicates, until early February 1991 when, by agreement, the cause was set for a jury trial to be held October 21, 1991.

In June 1991, the State filed and served upon the owners written interrogatories. One interrogatory inquired "[w]hat is the highest and best use of the Whole Property and the Remainder involved in this lawsuit, both prior to and after the taking, as said uses are considered ... by each and every person or expert who will express an opinion of fair market value and/or highest and best use at trial." In their answers served on the State, the owners responded that their expert witness, Mr. McNabb, would be their witness regarding such matters and that he "has not yet reached his value conclusions or completed his report." The owners stated they would supplement their answer as soon as possible after receiving McNabb's conclusions.

A little more than thirty days before trial was to begin October 21, 1991, the owners had not supplemented their answer to the foregoing interrogatory. The State also had not supplemented certain of its answers to interrogatories propounded by the owners. On September 19, 1991, the parties agreed, in a writing filed in the cause, that "discovery supplementation shall be considered timely [if] filed on or before 5:00 p.m. on Monday, September 23, 1991," and neither "will object to the timeliness of materials produced before that time." This date, September 23, 1991, was a day *within* thirty days before trial.

Rule 166b(6)(b) of the Texas Rules of Civil Procedure provides as follows:

If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, *but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.*

(emphasis added). The Rule also provides that the trial court might require or permit later supplementation if "the court finds that a good cause exists" for doing so. The apparent effect of the parties' agreement was to permit supplementation as late as September 23, 1991, without objection by either party, notwithstanding the requirements of Rule 166b(6)(b).

On September 23, 1991, the last day possible to supplement answers under the parties' agreement, the owners supplemented their answer to the interrogatory quoted above. Their answer declared that the highest and best use of the property before the taking was a "Free standing restaurant" and, after the taking, "Destination retail/commercial."

Seven days later, on September 30, 1991, the State moved the trial court for leave to supplement its own answers to interrogatories previously propounded by the owners. The request was based on the following factors averred in the motion:

1. The State had "exercised due diligence in attempting to learn the highest and best use of the subject property as claimed by the Defendants and their appraisers."

2. To prepare properly for trial the State needed "to employ someone with expert knowledge in location rental and sale of restaurants," a specialized field, in order "to determine the feasibility of the site having a restaurant potential" and values.

3. The State had asked its "existing experts ... to formulate opinions as to the potential development of the [owners'] property as a restaurant site" and "is seeking to employ a person with knowledge of the ... Austin restaurant market to investigate and form his opinions as to suitability, costs, rentals and adaptability of the subject site as a restaurant location."

4. The foregoing "cannot be done within sufficient time to comply with the Rules of Civil Procedure and may not be capable of being done within the three weeks remaining until trial."

If denied leave to supplement its answers to interrogatories, the State requested in the alternative a continuance of the cause.

The trial court denied all relief on the State's motion. As a result, the State contends, it was forbidden to introduce at trial the opinions of its expert witnesses to the effect that the remaining property could not lawfully have been used as a restaurant site, after the taking, under existing city ordinances.

■ In its appeal, the State contends in its first three points of error that the trial court abused its discretion in denying relief on the motion described above. In that connection, we observe that the burden lay upon the State to show the requisite good cause for supplementing its answers to its opponent's interrogatories; in this Court, the burden lies upon the State to bring us a record demonstrating the trial court abused its discretion in failing to find good cause.

The substance of the State's argument is that it was "ambushed" when the owners declared on September 23, 1991, for the first time, their theory that the highest and best use of the property was use as a restaurant. We understand this to be an argument of surprise.

■ We believe the trial court could have reasonably concluded from the record that any surprise was of the State's own making. The State had, at the beginning of the suit, named Pizza Inn, Inc., a restaurant, as lessee of the property and requested issuance and service of citation upon that defendant. The owners objected to interrogatories about Pizza Inn, Inc. on the ground that they exceeded the maximum number of thirty interrogatories under Texas Rule of Civil Procedure 168. The State apparently abandoned the matter. Moreover, the owners had never designated any use as being their view of the highest and best use; it was not a question of a change in theory on their part. So far as our record reveals, no diligence was shown by the State in enforcing a response to their interrogatory, in this particular, until immediately before the thirty-day limit of Rule 166b(6)(b). The motion did not aver that the State was surprised by the answer to its interrogatory. The owners' response was timely under the parties' agreement, and the State elected to rely on its agreement as to supplementation rather than upon enforcement of Rule 166b. We mention the foregoing only as *possible* reasons the trial court *might* have considered in declining to find good cause for late supplementation by the State. Nothing in the record suggests the actual basis for the trial court's action in that regard; indeed, we do not have before us a statement of facts reflecting what transpired in the hearing on the State's motion. In these circumstances, we cannot find the trial court abused its discretion. *See Landon v. John–Paul Budinger, Inc.*, 724 S.W.2d 931, 940 (Tex.App.—Austin 1987, no writ).

■ Similarly, the record is silent as to the trial court's reasoning in denying the State's alternative request for continuance. The court might have reasoned that to grant the continuance would subvert the parties' agreement or the purposes of Rule 166b regarding supplementation, or the court might have refused a continuance on the ground that the State's application for continuance was not supported by the required affidavit as to the matters stated in Rule 252. In these circumstances, we cannot find the trial court abused its discretion in denying the requested continuance as an alternative to late supplementation by the State. *See Landon*, 724 S.W.2d at 940–41.

■ The State moved a second time for leave of court to supply late supplementa-

tion, or for a continuance in the alternative, which the trial court also declined to grant. The motion basically tracks the first motion filed by the State. The trial court declined to rule on the motion on the ground that the State had received a full hearing in connection with its first motion. We have no doubt that the trial court had the *power* to reconsider the matter after a hearing and to order the State's requested relief. The question, however, is whether the court abused its discretion in declining to do so when the substance of the two motions was the same. We hold the record does not demonstrate an abuse of discretion in the circumstances. The same reasoning applies to the State's second motion for continuance, and we hold accordingly.

For the reasons given, we overrule the State's points of error one, two, and three.

### THE "*SCHMIDT* FACTORS"

In point of error four, the State complains the trial court erroneously declined to submit the State's requested instructions, which would have directed the jury not to award compensation for the following: (1) injury that the owners shared with the community; (2) loss or decrease in traffic volume; (3) increased circuity of travel in reaching the property; (4) impairment of ingress and egress to the property; and (5) inconvenience or annoyance caused by construction. In point of error five, the State complains the trial court erroneously overruled the State's objection to submission of the charge without these instructions.

The record indicates that the State did not purport to condemn any of the owners' property except a narrow strip across their tract where it abutted the right-of-way line of Highway 183. Similarly, the record indicates that the owners did not contend that any of their *other* property had been taken or injured, either by way of inclusion in the State's condemnation petition or by inverse condemnation. Specifically, the owners did not contend that the State had taken or injured the incorporeal items of property mentioned in the State's requested instructions, nor did the owners request compensation therefor. Consequently, the re-

quested instructions bore on no issue material to the case.

■ The evidence regarding loss of traffic volume, increased circuity of travel, impairment of ingress and egress, and construction interference was given to explain the opinion of the owner's expert witness concerning market value—how these various factors would affect willing sellers and willing buyers in arriving at an agreeable price for the property remaining after the strip was taken. In *Schmidt*, we held similar testimony admissible for the limited purpose indicated. *See Schmidt*, 805 S.W.2d at 35. The instructions requested by the State would have misled the jury as to the applicable law. We hold the trial court did not err; consequently, we overrule points of error four and five.

■ In point of error six, the State complains the trial court erred in refusing to include in the charge the State's requested jury question number two, which pertained to community damages. The State's formulation of the question was as follows:

*Excluding* increase in value, if any, and decrease in value, if any, by reason of benefits or injuries *received by the defendants in common with the community generally and not peculiar to them and connected with their ownership, use, and enjoyment of the particular tract of land across which the strip of land has been condemned,* and taking into consideration the uses to which the strip condemned is to be subjected, what do [you] find to be the decrease in market value, if any, of the remainder of the Defendants' tract of land immediately after the taking of the strip condemned for highway purposes? Answer in Dollars and Cents, if any: $_____.

(emphasis added). This instruction follows closely the form suggested by the supreme court in *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 201 (1936). The trial court refused the State's requested question and submitted the following instead:

What was the decrease in the Fair Market Value of the remaining 18,750 square

feet of the Allen's [sic] land, as improved, immediately after the taking on January 23, 1990, taking into consideration the effect of the condemnation on the value of the remaining property?

Answer in Dollars and Cents: $_____.

The charge instructed the jury as follows: "Fair market value" means the price which the property would bring if offered for sale by one who desired, but is not obliged to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adapted and for which it either is or in all reasonable probability will become available within the reasonable future.

The special question submitted by the trial court appears to conform to the broad-form submission discussed in *Callejo v. Brazos Electric Power Cooperative, Inc.*, 755 S.W.2d 73 (Tex.1988), a form of submission superseding that recommended in *Carpenter*.

The State's argument under its point of error six is not directed so much at the form of the submission as it is to a precept included in the State's requested jury question but omitted from the special question and instruction given in the court's charge. We refer to the precept that in assessing an owner's injury or benefit one must exclude from consideration "an injury or benefit that the property owner experiences in common with the community," limiting the consideration to "an injury or benefit that is peculiar to the property owner and that relates to [his] ownership, use, or employment of the particular parcel of real property" condemned. Tex.Prop.Code Ann. § 21.042(c), (d) (West 1984).

The State argues in substance that the precept should have been included in the court's charge because it arose in the evidence. This evidence of "community damages" consisted, the State argues, of that evidence which pertained to loss or decrease in traffic volume, increased circuity of travel in reaching the property, impairment of ingress and egress, and inconvenience or annoyance caused by construction. (We reiterate that such evidence was given solely to explain an expert's opinion testimony as to the market value of the owner's remaining property.) The matter being thus raised by the evidence, the State concludes, the court was legally bound to instruct the jury regarding the legal precept stated in sections 21.042(c) and (d) of the Property Code. We disagree entirely.

█ The State's contention is founded upon a misunderstanding of what constitutes "community damages." The State's theory rests upon the idea that travelers on Highway 183, during its reconstruction and afterwards, will be inconvenienced, annoyed, or otherwise affected by the same construction activities, increased circuity of travel, and changes in traffic volume, ingress, and egress. This is undoubtedly true in a sense. To constitute "community damages," however, the claimed injury must be of the same *"nature* as is suffered from that cause in common with other *property owners* in the same community or section." *Fort Worth Improvement Dist. No. 1 v. City of Fort Worth*, 106 Tex. 148, 158 S.W. 164, 168 (1913) (emphasis added).

The crux of the issue is this: Unlike others in the community, the owners claim to have suffered an invasion of their proprietary interest—a strip of their land has been severed and taken from them, with resulting injury to the market value of their remaining property. In this they are decidedly different from persons in the community whose property has *not* been taken. The damages the owners claim, regarding the market value of their remaining property, are not of the same nature as any inconvenience or annoyance suffered by someone who merely travels the highway but whose property has *not* been taken. Those damages are peculiar to the owners and others similarly situated along Highway 183. They are *not* "community damages." *Id.* 158 S.W. at 169; *Texarkana & N.W. Ry. v. Goldberg*, 68 Tex. 685, 5 S.W. 824, 826 (1887) (cited in *Texas Reports as Texas & N.O. Ry. v. Goldberg*, 68 Tex. 685, 5 S.W. 824 (1887)).

Because there was no evidence of "community damages," there was no evidence to

justify submission of the legal precept stated in sections 21.042(c) and (d). We hold, therefore, that the trial court did not err in refusing to submit that precept. Accordingly we overrule the State's sixth point of error.

In its seventh point of error, the State complains the trial court erred in admitting in evidence the matters described above because there was evidence of general community damages. For the reasons given previously, we overrule the point of error.

Finding no error as assigned, we affirm the trial-court judgment.