

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

September 14, 1990

Honorable Rick Hamby
District Attorney
Howard County Courthouse
Big Spring, Texas    79720

Honorable Mark Edwards
Reagan County Attorney
P. O. Box 924
Big Lake, Texas    76932

Opinion No. JM-1221

Re:    Division of taxing au-
thority over certain severed
mineral interests between two
contiguous underground water
conservation districts
(RQ-1927), (RQ-1983)

Dear Mr. Hamby and Mr. Edwards:

This opinion responds to the issues you each raise under section 14 of Senate Bill 1634, which was enacted by the legislature in 1989. Acts 1989, 71st Leg., ch. 653, at 2153-55. Senate Bill 1634 created the Santa Rita Underground Water Conservation District [hereinafter the Santa Rita district] in Reagan County, Texas. Section 14 of the bill excludes certain lands from the Santa Rita district. Your requests focus on the ad valorem taxation of the severed mineral interests in the excluded lands that were annexed into the Glasscock County Underground Water Conservation District [hereinafter the Glasscock County district].[1]

We understand that some of the Reagan County landowners whose lands have been annexed into the Glasscock County district did not own all of the mineral rights in the annexed lands. You each ask whether the Santa Rita district or the Glasscock County district is authorized to tax the severed mineral interests since those interests were not

---

1. In 1981 the legislature created the Glasscock County district and provided that its boundaries were identical to those of Glasscock County. Acts 1981, 67th Leg., ch. 489, §§ 1-2, at 2104. Glasscock County is located immediately north of Reagan County.

owned by the persons who filed the petitions for annexation.[2]

Section 14(a) exempts from the district "any lands . . . annexed into" the Glasscock County district under section 51.714 of the Water Code prior to June 14, 1989, the effective date of the act. Section 51.714 permits an "owner of land" to file with the Glasscock County district "a petition requesting that the land described by metes and bounds in the petition be included in the district."

Section 14(b), which establishes another means of excluding lands from the Santa Rita district, provides in part that:

> (1) Within one calendar year from the effective date of this Act, the owner of land who owns land with[in] a delineated critical area[3] pursuant to Section 52.053, Water Code, and whose lands are within the district may file with the board a petition requesting that the owner's land be excluded from the district. The petition must describe the land by legal description or by metes and bounds or by lot and block number if there is a recorded plat of the area to be excluded from the district. This petition must be signed and notarized by the owner of the land.
>
> (2) The board shall accept the petition immediately and shall grant exclusion of the land described in the petition, the only requirement for review by the board being that of conformity to Subdivision (1) of this subsection. (Emphasis added.)

---

2. We have received correspondence indicating that the Santa Rita district asserts no right to tax mineral interests owned by the surface owners whose petitions for annexation were granted.

3. A "critical area" is an area designated and delineated by the Texas Water Commission as an area experiencing or expected to experience critical groundwater problems. Water Code § 52.001(14).

Except for lands that have been excluded under either section 14(a) or (b), the Santa Rita district includes all territory located within Reagan County. Acts 1989, 71st Leg., ch. 653, § 3, at 2153.

We have received correspondence indicating that some Reagan County landowners timely filed petitions for annexation under section 51.714 of the Water Code with the Glasscock County district and that those petitions were granted prior to June 14, 1989. The sample petitions for annexation that we have received refer to section 51.714 and request the annexation of "the land described by metes and bounds" in the exhibits attached to the petitions. The metes and bounds descriptions neither expressly include nor exclude minerals in or under the described land. We understand that the sample petitions are typical of the petitions filed under section 14(a).

We are also advised that some Reagan County landowners timely filed petitions under section 14(b) to exclude their lands from the Santa Rita district. We understand that nearly all of the landowners who filed section 14(b) petitions for exclusion with the Santa Rita district have also filed petitions with the Glasscock County district for annexation of the excluded lands.

The samples that we have received of annexation petitions filed by landowners whose lands were excluded pursuant to section 14(b) refer to section 52.521 of the Water Code, which authorizes the owner of land contiguous to an underground water district to file a petition for annexation.[4]

---

4. Section 52.521, along with the rest of subchapter K of chapter 52, was added to the Water Code by Senate Bill 1212 and took effect September 1, 1989. Acts 1989, 71st Leg., ch. 936, § 14 at 3998, § 21, at 4001. Subchapter K provides for the annexation of territory to and consolidation of districts. Id. § 14, at 3998-4000. Subchapter K is applicable to underground water conservation districts created by special law. Water Code § 52.005 (subchapters D, J, and K applicable to special law districts). Prior to the passage of Senate Bill 1212, some underground water conservation districts relied on the annexation provisions of chapter 51 of the Water Code, which covers water control and improvement districts. Section 51.714 is one of those

(Footnote Continued)

The sample petitions describe the land to be annexed by metes and bounds and neither expressly include nor exclude minerals in or under the described land. We understand that these samples are representative of the annexation petitions filed with the Glasscock County district by owners of lands excluded from the Santa Rita district pursuant to section 14(b).[5]

On April 26, 1989, the Senate Committee on Natural Resources conducted a public hearing during which it received testimony on Senate Bill 1634. Two witnesses spoke briefly in favor of the committee substitute for the bill. No one spoke against the bill. Senator Bill Sims, the bill's sponsor, spoke first on behalf of the committee substitute. His speech focused on section 14, which first appeared in the committee substitute adopted by the Natural Resources committee.[6] He referred to section 14 as the agreement negotiated between the two districts that would allow members of the farming community to annex into the Glasscock County district. He stated that the arrangement in section 14 had been worked out since some of the farming community felt they could work better with the Glasscock County district and that the Reagan County district thought that would work well for both sides. Senator Sims made no reference to the owners of the severed mineral interests.

_____

(Footnote Continued)
provisions. See, e.g., Acts 1981, 67th Leg., ch. 489, § 4, at 2104 (Glasscock County district may exercise powers permitted by chapter 51).

5. We assume for purposes of this opinion that before approval of any annexation petition all applicable requirements were satisfied. See, e.g., Water Code §§ 51.716, 52.523.

6. Sections 14(a) and 14(b) as added by the Senate Committee on Natural Resources are almost identical to the sections as enacted. On May 10, 1989, the House Committee on Natural Resources reported a substitute for Senate Bill 1634 that modified section 14(b) to permit only owners of land within delineated critical areas to file petitions for exclusion. The Senate version of section 14(b) would have allowed any owner of land within the Santa Rita district to file a petition for exclusion.

The next witness at the Senate hearing also did not mention the owners of the severed mineral interests, and only stated that section 14 was a closely negotiated arrangement that was satisfactory to the representatives of both districts. Public Hearing on S.B. 1634 Before Senate Comm. on Natural Resources, (April 26, 1989) (testimony of Tom Massey). The focus in the House was also on the settlement reached between the districts. Representative Robert Junell referred to the division of the county between the northern farming and the southern ranching communities and stated that the controversy about the northern part of the county had been settled by the parties. Public Hearing on C.S.S.B. 1634 Before House Comm. on Natural Resources, (May 10, 1989)(testimony of Rep. Robert A. Junell).

We are unaware of any constitutional provision restricting the legislature's choice of boundaries for conservation districts or properties to include within such districts. See Harris County Drainage Dist. No. 12 v. Houston, 35 S.W.2d 118 (Tex. 1931); 36 D. Brooks, County and Special District Law § 46.4, at 544-45; § 46.6, at 548-49 (Texas Practice 1989) (district boundaries may overlap or coincide with other governmental districts); Attorney General Opinion JM-827 (1987) (holding valid a water district created primarily to encompass a hazardous waste facility).[7] Nor has any brief submitted in conjunction with your requests referred us to such a prohibition.

We note that section 14(a) references section 51.714 rather than section 51.718 of the Water Code. In contrast to section 51.714, which permits a single landowner to petition for annexation, section 51.718 authorizes two or more landowners of a defined area of territory to petition for annexation. A section 51.718 petition must be signed either by a majority of the landowners in the territory or by 50 landowners if the territory contains more than 50

---

7. Although the legislature possesses broad authority to select the boundaries of and the properties to be included within water districts, the legislature has delegated to the Texas Water Commission only circumscribed powers over district creation. See Attorney General Opinion JM-1115 (1989) (while commission not authorized to create district excluding part of the mineral interests, district board could grant petition excluding such interests after district creation).

landowners. Annexation of property within the territory becomes final upon approval of a majority of the voters in the territory to be annexed as well as in the annexing district. Given the liability for district indebtedness and taxes imposed on annexed territory, we believe that the legislature would have referenced section 51.718 in section 14(a) if it had intended for property other than that of the petitioning landowner to be annexed into the Glasscock County district.[8]

We are unaware of any case construing either section 51.714 or 51.718 or their predecessors, articles 7880-75 and 7880-75b, V.T.C.S. See Acts 1925, 39th Leg., ch. 25, § 75, and § 75b, as added by Acts 1929, 41st Leg., 1st C.S., ch. 82, § 2. We think, however, that the courts would hold that both the owners of the surface estates and the owners of the severed mineral estates are separate landowners for purposes of section 51.714 and 51.718. See City of Corpus Christi v. Cartwright, 288 S.W.2d 836 (Tex. Civ. App. - San Antonio 1956, writ ref'd) (holding owners of severed mineral estates and owners of surface estates were landowners for district creation purposes and had to be considered in determining the sufficiency of a petition filed under article 7880-10 [now section 51.013 of the Water Code]); see also Nueces County Water Control & Improvement Dist. No. 4 v. Wilson, 304 S.W.2d 281 (Tex. Civ. App. - El Paso 1957, writ ref'd n.r.e) (court has jurisdiction to review denial by water district board of separate petitions filed under article 7880-76 [now section 51.692 of the Water Code] by owners of surface estates and oil and gas leases to exclude their interests in lands from the district).

Thus, we think the courts would construe section 51.714 to permit the annexation of lands only owned by the land-owner filing the petition for annexation.[9] To the extent

---

8. Sections 52.521 and 52.525 are analogous to sections 51.714 and 51.718. Section 52.521, as mentioned earlier in the text, authorizes a landowner to file a petition requesting that "the owner's land be included within" an underground water district. Section 52.525, in contrast, permits two or more landowners to petition to include a defined area of territory.

9. If a petition is filed pursuant to section 51.714
(Footnote Continued)

the Glasscock County district has annexed prior to June 14, 1989, the lands owned by a landowner who filed an annexation petition under section 51.714 in accordance with section 14(a), those lands will be taxable by the Glasscock County district. The Santa Rita district and not the Glasscock County district may tax the severed mineral interests in those lands unless the owners of those severed interests have filed a section 51.714 petition that was approved in accordance with section 14(a).[10]

Section 14(b) reinforces our conclusion with regard to section 14(a) and its reference to section 51.714. Subdivision (1) of section 14(b) provides that "the owner of land" may file "a petition requesting that the owner's land be excluded" and that the petition "must be signed by and

---

(Footnote Continued)
the district is permitted but not obligated to add the petitioner's lands. Water Code § 51.716. The district may therefore refuse to add a severed mineral estate if the owner of the estate files a petition for annexation under section 51.714. See also Water Code § 52.523(a) (board has discretion to grant or deny section 52.521 petitions filed by single landowners). Since chapter 52, which governs underground water districts, does not apply to oil and gas wells permitted by the Texas Railroad Commission, some districts may choose to deny such a petition. Water Code § 52.170(e) (nothing in chapter applies to wells permitted by commission).

10. Article 8, section 11, of the Texas Constitution provides that all property shall be taxed in the county where situated. Texas courts have construed this provision in light of the common law to mean that governmental entities may tax only property within their jurisdiction. See, e.g., Great Southern Life Ins. Co. v. Austin, 243 S.W. 778, 780 (Tex. 1922). Since we determine that the severed mineral interests in issue have not been excluded from the Santa Rita district by the action of the surface owners, Santa Rita possesses the requisite jurisdiction to tax those severed interests. See also Tax Code §§ 21.01, 25.04 (separate estates or interests in lands are listed separately by name of the owners and taxable if located in the district on January 1 of the tax year).

notarized by the owner of the land."[11] By using language referring only to the owner of the land and the owner's land, the legislature has indicated its intent to authorize certain landowners to petition for exclusion of only their property from the Santa Rita district. If the legislature had intended the exclusion of all property rights in the excluded lands, including those not held by the petitioning owners, such as the severed mineral interests, we believe the legislature would have so indicated by referring to landowners and their territory as in sections 51.718 and 52.523 of the Water Code.

In summary, the Santa Rita district and not the Glasscock County district may tax the severed mineral interests in the Reagan County lands that have been annexed into the Glasscock County district upon approval of the annexation petitions filed by the surface owners of those lands. Nevertheless, the Glasscock County district and not the Santa Rita district may tax a severed mineral interest if the owner of the severed interest has filed either a section 51.714 petition that was approved in accordance with section 14(a) or an appropriate annexation petition that was approved subsequent to the grant of the owner's petition excluding the interest from the Santa Rita district pursuant to section 14(b).

---

11. Although the term "land" or "lands" as used by the Texas courts generally refers to all interests or estates in land including those held by the owners of oil and gas leases and other mineral estates, the context in which the term is used may determine whether the term is used broadly to refer to all rights in the land or narrowly to refer to only certain rights such as surface rights. See, e.g., Averyt v. Grande, Inc., 717 S.W.2d 891, 893-4 (Tex. 1986); Holloway's Unknown Heirs v. Whatley, 131 S.W.2d 89, 91-2 (Tex. 1939). Our review of the legislative history and language of section 14 shows that the legislature intended to accomodate the interests of the farming community in northern Reagan County and accomplished this by authorizing any landowner holding any estate or interest in lands to act on his own to have his lands annexed into the Glasscock County district.

## S U M M A R Y

The Santa Rita Underground Water District and not the Glasscock County Underground Water District may tax the severed mineral interests in Reagan County lands that have been annexed into the Glasscock County district upon approval of annexation petitions filed by the owners of the surface estates in those lands.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Celeste Baker
Assistant Attorney General